UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. A. No. 06-1708 (CKK) |
| DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## MOTION FOR AN OPEN AMERICA STAY

Defendant Department of Justice, on behalf of the Federal Bureau of Investigation

("FBI"), hereby moves for a stay of proceedings pursuant to 5 U.S.C. § 552(a)(6)(C), and Open

America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976).  In support of

this motion, defendant respectfully submits the attached memorandum of points and authorities

with a supporting declaration (attached as Exhibit 1), and a proposed Order.  Plaintiff has been

consulted as required by LCvR 7(m) and has indicated it opposes this motion, and plaintiff and

defendant have jointly agreed upon a proposed briefing schedule for defendant's motion for an

Open America stay.  On January 9, 2007, the Court adopted plaintiff and defendant's proposed

briefing schedule by minute entry order.

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney
PETER D. KEISLER
Assistant Attorney General
ELIZABETH J. SHAPIRO
Assistant Director

_____/s/_____

HEATHER PHILLIPS, CA Bar #191620
Trial Attorney
United States Department of Justice
Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20001
(202) 616-0679
Heather.phillips@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civ. A. No. 06-1708 (CKK) |
| vi. | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR AN OPEN AMERICA STAY**

## I.  INTRODUCTION

Defendant Department of Justice, on behalf of the Federal Bureau of Investigation

("FBI"), moves this Court for a stay of proceedings pursuant to 5 U.S.C. § 552(a)(6)(C), and

Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976).  Plaintiff

has submitted a Freedom of Information Act ("FOIA") request to the FBI seeking "disclosure of

records concerning DCS-3000 and Red Hook, which are tools the Bureau has developed to

conduct electronic surveillance."  Plaintiff's Complaint ("Pl. Compl.") at ¶ 1.  Although the FBI

is exercising due diligence in responding to plaintiff's FOIA request, exceptional circumstances

prevent it from processing the request within the statutory time limit.  Pursuant to 5 U.S.C. §

552(a)(6)(C), which provides for additional time under such circumstances, defendant requests

that the Court stay the proceedings until the FBI is able to process plaintiff's request.  In support

of its motion, defendant FBI has provided a sworn declaration from David M. Hardy, Section

Chief of the Record/Information Dissemination Section, Records Management Division of FBI

Headquarters, which explains that the FBI requires a stay of approximately 27 months (three

1

months for plaintiff's FOIA request to rise to the top of the backlog queue for large requests and

24 months for processing), or until May of 2009, to process plaintiff's FOIA request and release

any responsive records.  See Hardy Declaration ("Hardy Decl.") attached hereto as Exhibit 1.

The FBI acknowledges that it is asking the Court for a lengthy stay, however the FBI's

request meets the standards established under Open America, and a stay until May of 2009 is

warranted by the facts of this case.  The FBI is processing plaintiff's request in accordance with

established policies that allow for the equitable and orderly processing of FOIA requests on a

first-in/first-out basis.  In addition, the FBI attempted to negotiate with plaintiff to narrow the

scope of responsive records, but plaintiff declined.  Although the FBI has a backlog of pending

FOIA requests, it is making substantial efforts to reduce the backlog and has achieved significant

reductions in backlog and processing time.  Nevertheless, the volume of potentially responsive

records in this case, the large number of pending requests that pre-date plaintiff's request, and

the limited resources currently available to the FBI for the processing of FOIA requests,

constitute exceptional circumstances necessitating a stay so that the FBI may complete its review

of the records.

## II. STATEMENT OF FACTS

### A. The FBI's FOIA Request Processing System

#### 1. Duties and Personnel Divisions

The Record/Information Dissemination Section ("RIDS"), Records Management

Division ("RMD"), at FBI Headquarters ("FBIHQ") in Washington, D.C., has the collective

mission of effectively planning, developing, directing, and managing responses to requests for

access to FBI records and information pursuant to FOIA; Privacy Act; Executive Order 12958,

as amended; Presidential, Attorney General, and FBI policies and procedures; judicial decisions;

and Presidential and Congressional directives.  Hardy Decl. at ¶ 2.  RIDS also provides

prepublication review of material written by current and/or former FBI employees concerning

FBI matters as mandated by the FBI's employment agreement, executes the FBI's historic

declassification program, and assists in managing defense discovery efforts in large

counterterrorism criminal trials.  Id. at ¶ 22.

Over the years, FOIA management at FBIHQ has continuously re-engineered the process

of responding to FOIA/Privacy Act requests in an effort to better serve the needs of requesters

who seek information from the FBI.  Id. at ¶ 21.  In 2002, reorganization of various divisions at

FBIHQ resulted in the formation of the RMD, which now handles all FOIA/Privacy Act requests

through RIDS.  Id.  These re-engineering efforts resulted in a new organizational plan for RIDS.

 Id.

RIDS currently employs approximately 203 personnel, most of whom are Legal

Administrative Specialists ("LAS"), and who are assigned among the 11 units within RIDS.  Id.

at ¶ 22.  RIDS employees intake, review, process, and release information in response to FOIA

and Privacy Act requests.  Id.  To accomplish this mission, RIDS consists of the following

eleven Units: one Service Request Unit ("SRU"), two Work Process Units ("WPU"), three

Classification Units ("CU"), four FOIPA Units ("Disclosure Units"),[1] and the Litigation Support

Unit ("LSU").  Id.

The SRU contains the Negotiation Team, which works with individuals whose requests

have generated a large volume of records, in an attempt to narrow the scope of responsive

records and facilitate a more rapid response.  Id.  Since 1995, this team has been able to reduce

---

[1] One of the four FOIPA Disclosure Units operates at an off-site location in Savannah,
Georgia.  Hardy Decl. at ¶ 22 n.3.

the scope of FOIA/Privacy Act requests by over 13 million pages.  Id.  The SRU has a RIDS

Public Information Official, who is responsible for assisting requesters with issues concerning

their request.  The Government Response Team ("GRT"), also a part of the SRU, provides timely

feedback to other federal agencies and other DOJ components with regard to referrals of

documents which are either FBI-originated or contain FBI-originated information.  Id.  Referred

documents are sent to the FBI for consultation or for direct response to the requester.  Id.

Finally, the SRU handles administrative appeals and criminal discovery matters.  Id.

      The two WPUs are responsible for reviewing and sorting all correspondence/incoming

requests for information from the public, Congress, Presidential Libraries, foreign governments,

other federal and state agencies, and other FBI entities (i.e., FBI field offices, Legal Attaches).

Id.  The WPUs conduct searches of the General Indices (described below) for identifiable

records, confirm responsive documents, stamp files for retention, address fee issues (other than

fee waiver reviews), retrieve and forward files for scanning into FDPS, respond to status

inquiries, and maintain requests prior to their transfer to the Disclosure Units.  Id.

      The WPUs handle the various initial tasks required to "perfect" a FOIA/Privacy Act

request, including sending letters to acknowledge requests, advising a requester to provide

identifying data so that an accurate records search can be made and/or to submit a notarized

signature/Privacy Act waiver, and advising a requester when no responsive records are located.

Id.  The WPUs also open new requests, assign a FOIA/Privacy Act Request Number, and enter

the perfected requests into the FDPS tracking system.  Id.  The WPUs are responsible for

preparing perfected requests for transfer to the four Disclosure Units.  Id.   A request is

considered "perfected" when all administrative tasks have been completed and all responsive

documents have been scanned into FDPS.  Id.  Once a request has been perfected it is placed in

the "perfected backlog" for assignment to a FOIA Disclosure Unit for processing.  Id.

　　　To ensure fairness to all requesters and to equitably administer the deluge of FOIA/Privacy Act requests received by the FBI, a request is assigned based on the date of receipt on a first in/first out basis within each of three queues.  Id.  The FBI uses a three-queue system as a way to fairly assign and process new requests.  Id.  The three-queue system went into effect on July 10, 1997, replacing the prior system of only two queues (one for 100 pages or less, the other for requests greater than 100 pages).  Id.  The three-queue system established multi-track processing for requests, based on the amount of time and work involved in handling a particular request.  Id.  The system nevertheless preserves the principle that, within the three queues, requests are still assigned and processed on a first-in/first out basis.  Id.

　　　The placement of a request in one of the three queues depends on the total amount of material responsive to that request:  500 pages or less ("small queue"), 501 to 2,500 pages ("medium queue"), or more than 2,500 pages ("large queue").  Id.  This standard operating procedure, coupled with the FBI's first in/first out policy, permits requests to be addressed in the order in which they are received, while obviating the inequities to other requesters whose interests relate only to a small number of documents.  Id.  As described above, individuals whose requests have been placed in the large queue are given the opportunity, through contact with the SRU's Negotiation Team, to reduce the scope of their requests and accelerate assignment of their requests by relocating them to a more advantageous queue.  Id.

　　　The three CUs are responsible for complying with the classification/declassification review of FBI records under Executive Order 12958, as amended, and for conducting mandatory declassification review consistent with Executive Order 12958, as amended.  Id.  The CUs review documents responsive to FOIA/Privacy Act requests, criminal and civil discovery

requests, Congressional and Presidential mandates, Presidential Library requests, mandatory declassification requests, Office of Inspector General Reports, and other federal agency requests in order to determine whether such material should remain classified or be declassified.  Id.  In addition, the CUs review and prepare classified material for review by the Department of Justice Review Committee ("DRC").[2]  Id.

The four FOIPA Disclosure Units perform the actual processing of records pursuant to the provisions of the FOIA and Privacy Act.  Id.  Processing involves a page-by-page, line-by-line review of the responsive documents to determine which, if any, FOIA and/or Privacy Act exemptions may apply.  Id.  This includes redaction of the exempt material and notation of the applicable exemption(s) in the margins of each page and/or preparation of deleted page information sheets when pages are withheld in their entireties, which is now done electronically in FDPS.  Id.  During the course of their review, the Disclosure Units consult with other government agencies for their determination as to the releasability of the other agency's information contained within FBI records, or refer non-FBI documents to those originating agencies for processing and direct response to the requester.  Id.  The Disclosure Units ensure that FOIA and/or Privacy Act exemptions have been applied properly, no releasable material has been withheld, no material meriting protection has been released, all necessary classification reviews have been completed by transferring applicable cases to the CUs, and other government agency information and/or entire documents originating with other government agencies have been properly handled.  Id.

---

[2]  The DRC is the FBI's appellate authority with regard to the implementation and administration of Executive Order 12958, as amended, and related directives and guidelines concerning classified information.  Hardy Decl. at ¶ 22 n.8.

The LSU is responsible for providing legal support and administrative assistance to the FBI's Office of the General Counsel and Chief Division Counsels and Assistant Division Counsels in the FBI's field offices, in all FOIA/Privacy Act requests that result in federal litigation.  Id.  The LSU coordinates the progress of the FBI's response to a particular FOIA/Privacy Act request as it progresses through the units described above, the receipt of substantive litigation-related information from involved FBI Special Agents ("SAs") in the field offices and the operational Divisions at FBIHQ, and the referral of documents to other DOJ components and government agencies.  Id.  The LSU prepares the administrative record, drafts both procedural and substantive declarations and court pleadings, codes documents processed by the Disclosure Units, and drafts detailed declarations justifying the assertion of all applicable FOIA/Privacy Act exemptions.  Id.

To promote administrative efficiency, LASs work on more than one request at a time.  Id. at ¶ 23.  Certain cases may require that the usual processing be halted midstream.  This can occur for a variety of reasons, including the resolution of a classification issue, the location of additional records, or consultation with other government agencies as to the nature and propriety of releasing certain information.  Id.  In the interest of efficiency, during this waiting period, the LAS may fully process other requests.  Id.  Large requests are often processed on parallel tracks with smaller requests in an attempt to ensure that one requester does not consume a disproportionate share of RIDS' resources.  Id.

Consistent with standard administrative procedure, any records referred to the FBI from other DOJ components or other government agencies in response to a particular request are added to that pending FOIA/Privacy Act request.  Id. at ¶ 24.  This process is an equitable way for RIDS to maintain administrative control of FOIA/Privacy Act requests.  Id.  Under this

system, the same LAS assigned to process a particular request will also handle the review of

records referred by other DOJ components or government agencies.  Id.  By ensuring continuity

in the processing of FOIA requests, this system is not only fair to all persons seeking information

under the FOIA, but is also administratively efficient, since the same issues presented by the

referred records will already have been addressed by the LAS in processing the responsive FBI

files.  Id.

**2.    FBI Systems of Records**

The Central Records System ("CRS") enables the FBI to maintain all information which

it has acquired in the course of fulfilling its mandated law enforcement responsibilities.  Id. at ¶

29.  The records maintained in the CRS consist of administrative, applicant, criminal, personnel,

and other files compiled for law enforcement purposes.  Id.  The CRS is organized into a

numerical sequence of files, called FBI "classifications," which are broken down according to

subject matter.  The subject matter of a file may correspond to an individual, organization,

company, publication, activity, or foreign intelligence matter (or program).  Id.  Certain records

in the CRS are maintained at FBIHQ, whereas records that are pertinent to specific field offices

of the FBI are maintained in those field offices.  Id.  While the CRS is primarily designed to

serve as an investigative tool, the FBI searches the CRS for documents that are potentially

responsive to FOIA/Privacy Act requests.  Id.  The mechanism that the FBI uses to search the

CRS is the Automated Case Support System ("ACS").  Id.

On or about October 16, 1995, the ACS was implemented for all Field Offices, Legal

Attaches, and FBIHQ in order to consolidate portions of the CRS that were previously

automated.  Id. at ¶ 20.  The ACS can be described as an internal computerized subsystem of the

CRS.  Id.  Because the CRS cannot electronically query the case files for data, such as an

8

individual's name or social security number, the required information is duplicated and moved to

the ACS so that it can be searched.  Id.  More than 105 million records from the CRS were

converted from automated systems previously utilized by the FBI.  Id.  Automation did not

change the CRS; instead, automation has facilitated more economic and expeditious access to

records maintained in the CRS.  Id.

The retrieval of data from the CRS is made possible through the ACS using the General

Indices, which are arranged in alphabetical order.  Id. at ¶ 31.  The entries in the General Indices

fall into two categories: (a) a "main" entry, or "main" file, carries the name corresponding with a

subject of a file contained in the CRS; and (b) "reference" entries, sometimes called "cross-

references," are generally only a mere mention or reference to an individual, organization, or

other subject matter, contained in a document located in another "main" file on a different subject

matter.  Id.  The General Indices to the CRS files are the means by which the FBI can determine

what retrievable information, if any, the FBI may have in its CRS files on a particular subject

matter or individual.  Id. at ¶ 34.

**B.    Plaintiff's FOIA Request**

By letter dated August 11, 2006, plaintiff submitted a FOIA request to the FBI.  Id. at ¶

25.  Plaintiff's request sought "all agency records (including, but not limited to, electronic

records) concerning electronic surveillance systems known as DCS-3000 and Red Hook."  Id. at

Exhibit A, attached thereto.  By two separate letters both dated August 22, 2006, FBIHQ

acknowledged receipt of plaintiff's FOIA request, and notified plaintiff that the request for DCS-

3000 and Red Hook had been assigned FOIPA Request Nos. 1056287-000, and 1056307-000,

respectively.  Id. at Exhibit B, attached thereto.  By letter dated August 30, 2006, FBIHQ advised

plaintiffs that a search of the automated indices to the FBI's Central Records System ("CRS")

9

located no main Headquarters files responsive to plaintiff's DCS-3000 request.  Id. at Exhibit C, attached thereto.  FBIHQ conducted a similar search for plaintiff's Red Hook request, and that search located one main Headquarters file.  Id. ¶ 27 n.10.

In addition to initiating a standard search of records in the CRS, the FBI also conducted an individualized inquiry of the most logical offices at FBIHQ which could have potentially responsive records.  Id. at ¶ 37.  RIDS prepared and circulated an Electronic Communication ("EC") to those FBIHQ divisions and offices most likely to possess potentially responsive records requesting all personnel to conduct a thorough search of any documents in their possession, including unserialized copies and e-mails responsive to  plaintiff's request.[3]  Id.  As a result of these search efforts, which are now complete, a total of approximately 20,000 pages potentially responsive to plaintiff's request were located.  Id. at ¶ 38.

Plaintiff was notified of the large volume of potentially responsive documents, and by letter dated January 9, 2007, FBIHQ provided plaintiff with documentation of a telephone conversation between a RIDS employee and plaintiff's counsel, Marcia Hofmann.  Id. at ¶ 28.  This letter reiterated that:  (a) the records found to be responsive to plaintiffs' requests totaled approximately 20,000 pages; and (b) the FBI, in discussions with Ms. Hofmann, attempted to narrow the scope of the request in order to reduce the numbers of potentially-responsive records, thereby accelerating the processing of plaintiff's request, but these efforts were unsuccessful.  Id. at Exhibit D, attached thereto.

The 20,000 potentially-responsive documents are being scanned into electronic format

---

[3]  For administrative convenience, although initially assigned two FOIA request numbers, the two requests were combined into one search EC and were treated as if they were one request.  Hardy Decl. at ¶ 37 n.13.

and will be forwarded to the perfected-case backlog for assignment to a FOIPA processing

analyst.  Id. at ¶ 39.  Based on the page count of approximately 20,000 pages, plaintiff's request

is currently in the large queue of the perfected-case backlog.  Id.  As explained above, in order to

ensure fairness to all requesters and to equitably administer the deluge of FOIA/Privacy Act

requests received by the FBI, a request is assigned based on the date of receipt on a first in/first

out basis from within each of three queues.  Id.  Based on the date of plaintiff's request – August

11,  2006 –  there are approximately five (5) requests, which total 35,801 pages, pending ahead

of plaintiff's request in the large queue.  Id.

The FBI anticipates that the earliest plaintiff's request will be assigned to a Disclosure

Unit for processing is in approximately three (3) months, which is the estimated time for this

request to rise to the top of the queue.[4]  Id. at ¶ 39.  The FBI will be able to process

approximately 800 pages every four (4) weeks, and anticipates that it will require approximately

twenty-four (24) months for responsive documents to be processed and released to plaintiffs.  Id.

 Due to the size and complexity of the material, which consist of a number of highly technical

documents as well as lengthy email trails, the FBI will release documents on a rolling basis, that

is, as a significant number of the documents are processed they will be released approximately

---

[4]  If, for example, in a later-filed request, the FBI and/or DOJ grants a request for
expedited processing (or expedition is ordered by a court), that request is moved to the head of
the backlog queue.  Hardy Decl. at ¶ 39 n.14.  As a result, a request that has been granted
expedition could conceivably jump ahead of plaintiff's request as would any perfected request
with a date antecedent to that of plaintiff.  Id.

every four (4) weeks until the production is complete, rather than delay the release until the entire production is ready.  Id.

   C.   **Facts Supporting an Open America Stay:  The FBI's Increasing FOIA Workload, Steps Taken to Address Backlog and Processing Delays, and Competing Demands on FBI Resources**

   The number of FOIA and Privacy Act requests received by the FBI has increased dramatically from the early 1980s.  Hardy Decl. at ¶ 5.  The Freedom of Information and Privacy Acts ("FOIPA") Section [the predecessor to RIDS] began processing requests in 1975.  Id. Initially overwhelmed by the number of requests, by 1981, the FBI had maintained a steady backlog of between 4,000-7,000 requests.  Id.  Then, beginning in 1985, the unavailability of additional employees and a steady, large stream of new requests increased the backlog substantially, until in 1996 there were in excess of 16,000 requests.  Id.  In 1996, the median time for a pending request was in excess of three years.  Id.

   In the past, the FBI repeatedly sought additional funding for the creation of new FOIPA positions.  Id. at ¶ 6.  For example, Congress appropriated funds in the 1997 fiscal year budget providing for 129 additional employees, and in the 1998 fiscal year budget providing for 239 additional employees.  Id.  In 2002, RIDS moved to paperless processing through its FOIPA Document Processing System ("FDPS").  Id.  The FDPS allows the user to scan FBI files, documents, and correspondence, and enables the user to process pages electronically rather than manually.  Id.  RIDS is now using this system to process virtually all of its FOIA/Privacy Act requests.  Id.  The new process required the FBI to redistribute some of its FOIPA personnel to other sections within the RMD in order to support the scanning and archival services necessary for automated processing.  Id.  Despite an additional reduction of RIDS personnel following September 11, 2001, the new efficiencies stemming from FDPS allowed the FBI to make great

strides in reducing its FOIA/Privacy Act backlog.  Id.  For example, the backlog of requests in

RIDS in various stages of processing between December 31, 1996 and December 31, 2006,

dropped from 16,244 to 1,672.  Id.  The median processing time for a pending request dropped

from 1,160 days on December 31, 1996, to 156 days on December 31, 2006.  Id.

During 2006 there was an increase in requests, up from an average of 911 per month in

2005 to an average of 1,277 per month.  Id. at ¶ 7.  Despite this increase, the FBI met or

surpassed its primary goal of reducing the time required to process requests.  Id.  In this regard,

the median time for processing small requests (less than 500 pages) decreased by 10%; the

median time for medium requests (501 pages -2500 pages) decreased by 16%.  Id.  However, the

median time for the processing of large queue requests (over 2500 pages) increased by 22 %.  Id.

 This increase was due to a concerted effort to reduce the backlog of the older, larger cases.  Id.

This effort resulted in the number of pending large queue requests decreasing from 122 to 151.

Id.

RIDS has taken all possible steps – using available technologies – to aid in the

streamlining and reduction of the FOIA/Privacy Act backlog.  Id. at ¶ 8.  These include the use

of direct on-line computer searches to locate responsive records, the use of forms that eliminate

delays associated with word processing, the formation of specific teams to target backlog issues,

the development of alternative methods to handle consultations with other government agencies,

and the formation of the RIDS FOIPA Litigation Services Unit ("LSU"), which handles all

FOIA/Privacy Act litigation.  Id.  RIDS has a FOIPA Process Board and an Information

Technology Change Management Board to improve existing processes, including the use of

information technology enhancements to the existing automated processing system.  Id.  These

boards provide a systematic methodology to implement continuous process improvement for the

future.  Id.

Two steps the FBI is taking to update its technology and facilities have the potential to reduce dramatically the FBI FOIA/Privacy Act processing times:  (a) development of the electronic investigative case file (the Sentinel Project) and (b) establishment of an FBI Central Records Complex.  Id. at ¶ 9.  The Sentinel Project is an on-going, multi-year project that will result in the elimination of paper investigative case files.  Id.  With an embedded Records Management Application ("RMA"), FBI employees will be able to search for and retrieve these records electronically.  Id.  Concurrently, the FBI has begun the process of designing and building a new, state-of-the art Central Records Complex ("CRC") in Frederick County, Virginia.  Id.  This initiative will consolidate all closed FBI paper records from more than 265 different storage locations to one central site.  Id.  When requested, paper records will be scanned and forwarded electronically.  Id.  These initiatives will significantly improve RIDS's search and record retrieval capabilities by increasing search accuracy, by decreasing search time, by reducing lost files and missing serials, and eliminating the manual movement of files.  Id.  RIDS expects these initiatives, after they are fully implemented, to reduce by 40% current processing times.  Id.  Phase One of the Sentinel Program is scheduled to be launched in the spring of 2007.  Id.  In 2006, RIDS completed its first phase of moving to an interim facility in Frederick County, Virginia, to recruit and train new employees in anticipation of the construction of the CRC.  Id.  While this move is essential to future FBI FOIA/Privacy Act operations, it has created significant strains on the FBI's FOIA/Privacy Act resources.  Id.

Although the decision regarding the exact location of the permanent CRC site in Frederick County, Virginia, is still pending at the U.S. General Services Administration, the FBI has begun the temporary relocation of RMD sections to interim sites in Frederick County,

14

Virginia, and will continue with a full relocation of its workforce once the permanent CRC is

built and ready for occupancy, sometime around the year 2010. <u>Id.</u> at ¶ 11. The interim sites are

approximately 90 miles out of the Washington, D.C. metropolitan area. <u>Id.</u>

 RIDS began relocation of its operations in February of 2006 by establishing an advance

team to prepare for the eventual relocation of RIDS in incremental stages. <u>Id.</u> at ¶ 12. In the

summer of 2006, RIDS began the first phase of its relocation by reassigning five and one half of

its ten unit functions to an interim site. <u>Id.</u> The reassigned sections were half of the Service

Request Unit, and all of Work Process Unit One, Work Process Unit Two, FOIPA Unit One,

FOIPA Unit Two, and Classification Unit Two. <u>Id.</u> To ensure continuing RIDS operations

during the move, half of the Service Request Unit function and the functions of FOIPA Unit

Three, Classification Unit One, Classification Unit Three, and the Litigation Support Unit

remain at FBIHQ. <u>Id.</u> These FBIHQ units, with a total of 85 employees currently on board,

consist of the most senior and experienced RIDS employees. <u>Id.</u>

 As evidenced by the FBI's 2006 FOIA/Privacy Act statistics discussed above, RIDS is

making every effort to minimize disruption to operations during this transition period. <u>Id.</u> at ¶

13. This has been made all the more challenging because many employees have decided not to

transfer with their unit function, opting to retire or find other jobs rather than relocate to

Frederick County, Virginia. <u>Id.</u> Unfortunately, many of these employees are among the most

senior and experienced in their area of expertise. <u>Id.</u> Since RMD announced its off-site

relocation plans, a total of 58 former RIDS employees have either resigned, retired, or found

other jobs in the Washington, D.C., area, rather than relocate with their unit. <u>Id.</u> To date, a total

of 64 RIDS employees from FBIHQ relocated with their unit to Frederick County, Virginia. <u>Id.</u>

 To bring staffing levels back up, the FBI is engaged in aggressive and intense recruitment

and hiring efforts in the Frederick County, Virginia area.  Id. at ¶ 14.  In response to several

recent postings for new hires, RIDS selected 333 individuals for interviews in June and

November of 2005 and in January, February, March, August, October, and December of 2006,

collectively.  Id.  Of the 333 selected for interview, 82 candidates advised they were no longer

interested prior to interview; of the remaining 251 candidates interviewed, 94 either declined the

initial offer of conditional employment following their interview or were disqualified during

their background investigation, 35 employees have come on board, and the remaining are still

pending in the background process.  Id.  Past experience has shown that approximately 33% of

those in FBI background investigations successfully complete the process.  Id.  With

approximately 203 employees currently on the rolls, RIDS is 115 positions under its funded

staffing level of 311employees due to attrition and reasons attributable to the move.  Id.

        In addition, in light of the continuing resolution pursuant to which much of the federal

government is operating, and which has resulted in a hiring freeze until further notice, RMD may

not be able to hire any new support employees in the immediate future.  Id.  The new RIDS

employees who have less than one year of experience are in various stages of professional

development, but none are yet operating as experienced employees; it takes an average of three

years to adequately train a new employee in the FOIA/PA process to be able to work

independently in a productive, efficient, and effective manner.  Id.  Accordingly, RIDS has only

a limited number of experienced employees processing FOIA/PA requests at this time.  Id.

        Simultaneously with this reduction in personnel, RIDS has experienced a significant

increase in its FOIA litigation workload, including several urgent and competing federal district

court litigation deadlines that have impacted the FBI's ability to process recently located records.

Id. at ¶¶ 10, 15.

16

In <u>Gerstein v. CIA, et al.</u>, Civ. A. No. 06-4643 (N.D. Cal.), plaintiff seeks, <u>inter</u> <u>alia</u>, access to all documents related to criminal referrals submitted to the U.S. Department of Justice or the FBI since January 1, 2001, regarding unauthorized disclosures of classified information to the press or public. Hardy Decl. at ¶ 16. The court has ordered the FBI to expedite plaintiff's request, which has resulted in the FBI's intense search and identification of over 2,500 pages of potentially responsive records, with the search still ongoing. <u>Id.</u> The FBI sought and received an additional 120 days from the original date of January 5, 2007, initially ordered by the court to complete its review and processing of this material. <u>Id.</u> The FBI must now review, process and release over 2,500 pages by April 27, 2007. <u>Id.</u>

In the FBI's largest FOIA litigation in its history, <u>Rosenfeld v. U.S. Department of Justice, et al.</u>, Civ. A. Nos. 90-3576 MHP, 85-1709 MHP and 85-2247 (N.D. Cal.), the FBI has been ordered to conduct hand searches of its COINTELPRO files for numerous subjects and to open 13 new FOIPA requests on individual subjects. Hardy Decl. at ¶ 17. In order to comply with these demands, the FBI has again had to realign its personnel resources and has made a substantial commitment of resources to address these court-ordered issues. <u>Id.</u>

In <u>Hidalgo v. FBI</u>, Civ. A. No. 06-CV-1513 (D.D.C.), the FBI has had to review and process over 3,000 pages of documents responsive to plaintiff's request for documents related to an acknowledged FBI informant, with a completion date of March 16, 2007. Hardy Decl. at ¶ 18. Also, in <u>Vampire Nation v. Dep't of Justice, et al.</u>, Civ. A. No. 06-CV-01950 (D.D.C.), the FBI is requesting an <u>Open America</u> stay from the Court in the next several weeks. Hardy Decl. at ¶ 19. If the request is either denied by the court or substantially reduced, additional shifting of already strained employee resources will become necessary. <u>Id.</u>

Finally, in the past, the backlog in RIDS has been exacerbated by the high volume of

17

administrative appeals which require review and response by the RIDS personnel.  Id. at ¶ 20.

RIDS personnel work closely with the staff of the U.S. Department of Justice, Office of

Information and Privacy ("OIP"), to review and assist with OIP's responses and determinations

of pending appeals.  Id.  During 2006, the FBI received a total of 1015 administrative appeals.

As of January 31, 2007, 525 administrative appeals were pending resolution.  Id.  While this

number does not represent an increase, the number of appeals remains another significant drain

on resources, because inevitably the time spent by RIDS personnel handling these appeals

reduces the amount of time for regular processing duties.  Id.

### III.  ARGUMENT

#### A.    Legal Standard For a Stay of Proceedings

An agency receiving a FOIA request generally must determine whether to comply with

the request within 20 working days.  5 U.S.C. § 552(a)(6)(A)(i).  Once the initial twenty days has

passed without an agency determination on the request, the FOIA requester "shall be deemed to

have exhausted his administrative remedies," Id. at § 552(a)(6)(C)(I), and the requestor can file

suit in federal court.  The Court may, however, "allow the agency additional time to complete its

review of the records" upon a showing that "exceptional circumstances exist and that the agency

is exercising due diligence in responding to the request."  Id. § 552(a)(6)(C)(i).  This provision

"was designed and inserted specifically as a safety valve for [FOIA]."  Open America, 547 F.2d

at 610.

Effective October 2, 1997, as part of the Electronic Freedom of Information Act

Amendments of 1996, Congress amended 5 U.S.C. § 552(a)(6)(C)(i) by adding the following

two subsections:

(ii)  For purposes of this subparagraph [5 U.S.C. § 552(a)(6)(C)], the term

"exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

(iii)  Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing the request (or a modified request) under clause (ii) after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

See 5 U.S.C. § 552(a)(6)(C)(ii), (iii).[5]

The leading case construing section 552(a)(6)(C) is Open America v. Watergate Special

Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976).  In that case, which involved a FOIA request

directed to the FBI, the Court of Appeals for the D.C. Circuit held that an agency is entitled to

additional time to process a FOIA request under § 552(a)(6)(C) when it

is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it "is exercising due diligence" in processing the requests.

Id. at 616 (quoting 5 U.S.C. § 552(a)(6)(C)).[6]  See also Oglesby v. Department of the Army, 920

F.2d 57, 64 (D.C. Cir. 1990) ("Frequently, if the agency is working diligently, but exceptional

circumstances have prevented it from responding on time, the court will refrain from ruling on

---

[5]  The 1996 Amendments to FOIA upheld the decision in Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976), affirmed the proposition that stays should be granted to agencies deluged with FOIA requests, and clarified that even a "predictable agency workload of requests" constituted "exceptional circumstances" when an agency could demonstrate that it was making progress in reducing its backlog.  See, e.g., H.R. Rep. No. 104-795, at 24, reprinted in 1996 U.S.C.C.A.N. 3448, 3467 (noting that the FOIA Amendments were "consistent" with the holding in Open America).

[6]  At the time of the Open America decision, the D.C. Circuit found "exceptional circumstances" where the FBI had a backlog of "only" 5,137 requests.  See Open America, 547 F.2d at 609, 613.

the request itself and allow the agency to complete its determination.").  Courts "cannot focus on theoretical goals alone, and completely ignore the reality that these agencies cannot possibly respond to the overwhelming number of requests received within the time constraints imposed by FOIA."  Cohen v. FBI, 831 F. Supp. 850, 854 (S.D. Fla. 1993).

"[E]xceptional circumstances" therefore include "any delays encountered in responding to a request as long as the agencies are making good-faith efforts and exercising due diligence in processing requests on a first-in, first out basis."  Appleton v. FDA, 254 F. Supp. 2d 6, 8-9 (D.D.C. 2003).  In addition, "exceptional circumstances" include delays encountered when an agency is "deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of . . . [5 U.S.C. § 552(a)(6)(A)], and when the agency can show that it is 'exercising due diligence'" in processing the requests.  Edmonds v. FBI, 2002 WL 32539613, at *1 (D.D.C. Dec. 3, 2002) (quoting Open America, 547 F.2d at 616).[7]  "It also has been recognized, based on [] legislative history, that other circumstances in addition to FOIA request backlogs may be a basis for finding exceptional circumstances, including 'resources being devoted to the declassification of classified material of public interest, and the number of requests for records by courts or administrative tribunals.'"  Center for Public Integrity v. U.S. Department of State, 2006 WL 1073066, *2 (D.D.C. 2006) (quoting Wilderness Soc'y v. U.S. Department of the Interior, 2005 WL 3276256, *6 (D.D.C. 2005).

Thus, under D.C. Circuit law, exceptional circumstances have been construed to exist and

---

[7]  "Exceptional circumstances" permitting the granting of additional time do not include delays resulting from a "predictable workload" of FOIA requests, "unless the agency demonstrates reasonable progress in reducing its backlog of pending requests."  5 U.S.C. § 552(a)(6)(C)(ii).

a stay pursuant to FOIA and the Open America doctrine may be granted: "(1) when an agency is burdened with an unanticipated number of FOIA requests; *and* (2) when agency resources are inadequate to process the requests within time limits set forth in the statute; *and* (3) when the agency shows that it is exercising 'due diligence' in processing the requests; *and* (4) the agency shows 'reasonable progress' in reducing its backlog of requests." Williams v. FBI, 2000 WL 1763680, *2 (D.D.C. 2000) (emphasis in original) (citations omitted); see also Summers v. Department of Justice, 925 F.2d 450, 452 n.2 (D.C. Cir. 1991) (noting first three factors).

Courts have frequently issued orders extending the time to respond to FOIA requests. See e.g., Piper v. United States Department of Justice, 339 F. Supp. 2d 13, 16 (D.D.C. 2004) (discussing a stay of two years given to the FBI); Appleton, 254 F. Supp. 2d at 11 (granting FDA's motion for stay pending completion of search and production of documents); Williams v. FBI, 2000 WL 1763680, at *3 (giving the FBI until May 2, 2001, to review records requested prior to August 21, 1998); Judicial Watch of Florida, Inc. v. United States Department of Justice, 102 F. Supp. 2d 6, 9 & n.1 (D.D.C. 2000) (discussing an order giving the FBI until June 8, 2000, to respond to a request dated July 15, 1997); Edmond v. United States Attorney, 959 F. Supp. 1, 4 (D.D.C. 1997) (giving the U.S. Attorney's Office until April 1, 1998 to respond to a request filed August 14, 1992); Rabin v. United States Department of State, 980 F. Supp. 116, 123-24 (E.D.N.Y. 1997) (granting motion for Open America stay and permitting Department of State over three years to process plaintiff's FOIA request); Jiminez v. FBI, 938 F. Supp. 21, 31 (D.D.C. 1996) (granting FBI's request for stay and permitting it over four years to respond to plaintiff's FOIA request); Ohaegbu v. FBI, 936 F. Supp. 7, 8-9 (D.D.C. 1996) (granting request for stay and permitting July 1997 response to FOIA request submitted in July 1995).

As shown below, because the FBI can demonstrate both exceptional circumstances and

21

due diligence in handling plaintiff's request, as well as reasonable progress in reducing its

backlog, the Court should stay the proceedings until May of 2009 to allow the FBI time to

process plaintiff's request.

**B.**    **The FBI is Entitled to an Open America Stay**

**1.**    **Plaintiff's Refusal to Narrow the Scope of its Request Weighs in Favor of Granting a Stay**

An important consideration in determining whether or not an Open America stay is

warranted is the extent to which a requester cooperated with the agency by agreeing to modify or

narrow the request.  FOIA expressly provides that the "[r]efusal by a person to reasonably

modify the scope of a request or arrange an alternative time frame for processing the request (or

a modified request) . . . after being given the opportunity to do so by the agency to whom the

person made the request shall be considered as a factor in determining whether exceptional

circumstances exist . . . ."  5 U.S.C. § 552(a)(6)(C)(iii).  This factor weighs heavily in favor of

granting a stay here.

Plaintiff's request seeks "[a]ll records (including but not limited to, electronic records)

concerning electronic surveillance systems known as DCS-3000 and Red Hook, to include any

reports made by the FBI to Congress on the Bureau's use of these technologies."  Hardy Decl. at

Exhibit A.  The FBI informed plaintiff that the records found to be potentially responsive to

plaintiff's requests totaled approximately 20,000 pages.  Id. at Exhibit D.  Given the large

volume of potentially responsive documents, the FBI requested that plaintiff limit the scope of

the documents requested, but plaintiff declined to do so.  Id.  Given that plaintiff submitted an

extremely broad FOIA request, and then refused to narrow the scope, plaintiff should not be

allowed to thereafter complain when the FBI requires additional time to process the

extraordinarily large number of documents that are potentially responsive to plaintiff's request.

## 2.    The FBI is Operating Under Exceptional Circumstances

During 2006 there was an increase in FOIA requests, up from an average of 911 per month in 2005 to an average of 1,277 per month.  Hardy Decl. at ¶ 7.  As of December 31, 2006, the backlog of requests in RIDS in various stages of processing stood at 1,672.  Id. at ¶ 6.  The FBI has taken all possible steps to aid in the streamlining and reduction of the FOIA/Privacy Act backlog, including development of the electronic investigative case file (the Sentinel Project), and the establishment of an FBI Central Records Complex in Frederick, Virginia.  Id. at ¶¶ 8-9.  The FBI expects these initiatives, after they are fully implemented, to reduce by 40% current processing times.  Id. at ¶ 9.  Unfortunately, however, in the short term, there has been an impact on available FBI FOIA processing resources.

While RIDS has transferred more than half of its unit functions to an interim site in Frederick, Virginia, many of the employees in those units, who are among the most senior and experienced in their areas of expertise, have opted to retire or find other jobs rather than relocate. Id. at ¶ 13.  Since RMD announced its off-site relocation plans, a total of 58 former RIDS employees have either resigned, retired, or found other jobs in the Washington, D.C., area, rather than relocate with their unit.  Id.

To bring staffing levels back up, the FBI is engaged in aggressive and intense recruitment and hiring efforts in the Frederick County, Virginia area.  Id. at ¶ 14.   Nonetheless, RIDS has yet to fill many of the available positions.  In addition, the new RIDS employees who have less than one year of experience are in various stages of professional development, but none are yet operating as experienced employees; it takes an average of three years to adequately train a new

employee in the FOIA/PA process to be able to work independently in a productive, efficient, and effective manner.  Id.  Accordingly, RIDS has only a limited number of experienced employees processing FOIA/PA requests at this time.  Id.  In fact, with approximately 203 employees currently on the rolls, RIDS is 115 positions under its funded staffing level of 311 employees due to attrition and reasons attributable to the move to Frederick, Virginia.  Id. Moreover, the continuing resolution under which the federal government is currently operating has also resulted in a hiring freeze until further notice.  Id.

Simultaneously with this reduction in personnel, RIDS has experienced a significant increase in its FOIA litigation workload, including several urgent and competing federal district court litigation deadlines that have impacted the FBI's ability to process recently located records. Id. at ¶¶ 10, 15.  As described above, RIDS has been ordered by courts in Gerstein v. CIA, et al., Civ. A. No. 06-4643 (N.D. Cal.), Rosenfeld v. U.S. Department of Justice, et al., Civ. A. Nos. 90-3576 MHP, 85-1709 MHP and 85-2247 (N.D. Cal.), and Hidalgo v. FBI, Civ. A. No. 06-CV-1513 (D.D.C.), to process and produce documents in the next few months.  Hardy Decl. at ¶¶ 16-18.  These cases take resources away from other pending FOIA requests.

Finally, the backlog in RIDS is exacerbated by the high volume of administrative appeals that require review and response by the RIDS personnel.  Id. at ¶ 20.  During 2006, the FBI received a total of 1015 administrative appeals.  As of January 31, 2007, 525 administrative appeals were pending resolution.  Id.  While this number does not represent an increase, the number of appeals remains another significant drain on resources, because inevitably the time spent by RIDS personnel handling these appeals reduces the amount of time for regular processing duties.  Id.

For all of these reasons, the FBI faces "exceptional circumstances" in reducing its FOIA backlog warranting an Open America stay, and a stay until May of 2009 is well within the range of stays granted by other courts.  See, e.g., Edmonds, 2002 WL 32539613, at *2 (FOIA staff's time spent on administrative appeals, litigation and "large projects" contributed to finding of exceptional circumstances); Jiminez, 938 F. Supp. at 31 (four-year stay granted to process 700 pages); Haddon v. Freeh, 31 F. Supp. 2d 16, 19 (D.D.C. 1998) (noting that court had granted Open America stay until January 1998 on request submitted to FBI nearly four years before); Guzzino v. FBI, 1997 WL 22886, *2 (D.D.C. 1997) (granting more than four-year stay because "[t]he FBI has shown that even though it is exercising due diligence, because of inadequate resources it is unable to respond to plaintiff's request within the statutory [] limit."); Ohaegbu, 936 F. Supp. at 8 (one-year stay granted to process 175 pages); Schweihs v. FBI, 933 F. Supp. 719, 721-22 (N.D. Ill. 1996) (exceptional circumstances justify four years to process undefined number of pages "over 1500"; dismissing action without prejudice); Cecola v. FBI, 1995 WL 549066, at *2 (N.D. Ill. 1995) (exceptional circumstances justified over two years to process 4,500 pages; dismissing action without prejudice).

### 3. The FBI is Exercising Due Diligence in Processing Plaintiff's Request and is Making Reasonable Progress in Reducing its Backlog of Pending Requests

In addition to demonstrating "exceptional circumstances," the FBI is exercising due diligence in responding to plaintiff's FOIA request and has made reasonable progress in reducing its backlog, despite the tremendous burdens on its resources.

Each year the FBI receives thousands of FOIPA requests.  Hardy Decl. at ¶¶ 5-7.  Due to this continual influx, and to the appeals and litigation arising from it, the FBI's backlog jumped

from its 1981 level of between 4,000-7,000 requests to a high of 16,000 requests in 1996.  <u>Id.</u> at

¶ 5.  In 1996, the median time for a pending request was in excess of three years.  <u>Id.</u>  The FBI,

however, has demonstrated its commitment to reducing the backlog of information requests that

confront it, and has achieved significant reductions since 1996.  Moreover, the FBI has taken all

available steps to implement even greater reductions and to achieve a more streamlined

processing of FOIA requests in the future.

　　　In the past, the FBI repeatedly sought additional funding for the creation of new FOIPA

positions.  <u>Id.</u> at ¶ 6.  For example, Congress appropriated funds in the 1997 fiscal year budget

providing for 129 additional employees, and in the 1998 fiscal year budget providing for 239

additional employees.  <u>Id.</u>  In 2002, RIDS moved to paperless processing through its FOIPA

Document Processing System ("FDPS").  <u>Id.</u>  The FDPS allows the user to scan FBI files,

documents, and correspondence, and enables the user to process pages electronically rather than

manually.  <u>Id.</u>  RIDS is now using this system to process virtually all of its FOIA/Privacy Act

requests.  <u>Id.</u>  The new process required the FBI to redistribute some of its FOIPA personnel to

other sections within the RMD in order to support the scanning and archival services necessary

for automated processing.  <u>Id.</u>  Despite an additional reduction of RIDS personnel following

September 11, 2001, the new efficiencies stemming from FDPS allowed the FBI to make great

strides in reducing its FOIA/Privacy Act backlog.  <u>Id.</u>  For example, the backlog of requests in

RIDS in various stages of processing between December 31, 1996 and December 31, 2006,

dropped from 16,244 to 1,672, resulting in a reduction of 14,572 requests.  <u>Id.</u>  The median

processing time for a pending request dropped from 1,160 days on December 31, 1996, to 156

days on December 31, 2006.  <u>Id.</u>

During 2006 there was an increase in requests, up from an average of 911 per month in 2005 to an average of 1,277 per month.  Id. at ¶ 7.  Despite this increase, the FBI met or surpassed its primary goal of reducing the time required to process requests.  Id.  In this regard, the median time for processing small requests (less than 500 pages) decreased by 10%; the median time for medium requests (501 pages -2500 pages) decreased by 16%.  Id.  However, the median time for the processing of large queue requests (over 2500 pages) increased by 22 %.  Id.  This increase was due to a concerted effort to reduce the backlog of the older, larger cases.  Id.  This effort, however, resulted in the number of pending large queue requests decreasing from 122 to 151.  Id.

As described above, the FBI has taken additional steps to further reduce the backlog and reduce processing time, including development of the electronic investigative case file (the Sentinel Project), and the establishment of an FBI Central Records Complex in Frederick, Virginia.  Id. at ¶¶ 8-9.  Although the implementation stage of these projects has strained FBI resources, ultimately the FBI expects these initiatives, after they are fully implemented, to reduce current processing times by 40%.  Id. at ¶ 9; see Pray v. FBI, 1995 WL 764149, *1 (S.D.N.Y. 1995) (considering improved technology as a factor in establishing due diligence).

Accordingly, the FBI has demonstrated that it has made reasonable progress in reducing its backlog, despite the tremendous burdens on its resources.  Indeed, the reduction in the backlog of requests from 16,244 on December 31, 2006, to 1,672 as of December 31, 2006, as well as the drop in median processing time for a pending request from 1,160 days in December of 2006 to 156 days as of December 2006, provide concrete evidence of "reasonable progress" for purposes of Section 552(a)(6)(C)(ii).

Moreover, the FOIPA Section's current three-queue, first-in/first-out system, is an improvement on the two-track, first-in/first-out system the D.C. Circuit expressly recognized as supporting the due diligence requirement.  <u>See</u> <u>Open America</u>, 547 F.2d at 616.  As explained above, the move to a three-tiered system has greatly increased the efficiency and fairness with which the FBI processes the thousands of FOIA requests it receives each year.

The FBI has likewise exercised due diligence in responding to plaintiff's FOIA request. The FBI has identified approximately 20,000 pages of documents potentially responsive to plaintiff's request.  <u>Id.</u> at ¶ 38.  The FBI is in the process of scanning the documents and will place plaintiff's request, pursuant to standard procedures, in the large queue of the perfected-case backlog, where it will be reviewed on a first-in/first-out basis.  <u>Id.</u> at ¶ 39.  Given the volume of potentially-responsive documents, and the fact that processing involves a page-by-page, line-by-line review of the responsive documents to determine what, if any, FOIA and/or Privacy Act exemptions may apply, it is not surprising that it will take the FBI months to process these documents.  <u>Id.</u> at 22; <u>see</u>, <u>e.g.</u>, <u>Jimenez</u>, 938 F. Supp. at 24, 31-32 (issuing <u>Open America</u> stay until March 2000, five years after request filed, so FBI could process 700 pages); <u>Ohaegbu</u>, 936 F. Supp. at 8 (granting stay until July 1997, over three years after request filed, to permit FBI to process 175 pages); <u>Cecola</u>, 1995 WL 549066, *1-2 (dismissing case without prejudice to permit FBI until November 1999 to complete processing of over 1,500 pages responsive to a request filed over six years before); <u>Fox v. United States Department of Justice</u>, 1994 WL 923072 (C.D. Cal. 1994) (granting FBI motion for stay until 1999 to process 300 pages of documents responsive to a request filed six years before).[1]

---

[1]  In these prior cases, the courts granted <u>Open America</u> stays lasting for several years to permit

Thus, because the FBI is "making a good faith effort and exercising due diligence in processing [plaintiff's] requests on a first-in first-out basis," see Kuffel v. BOP, 882 F. Supp. 1116, 1127 (D.D.C. 1995), its request for a stay should be granted.  See also Rabin, 980 F. Supp. at 122 ("[D]efendant State Department has shown the . . . 'due diligence' that courts have required . . .  [It] appears to be attempting to comply with requests."); Lisee v. CIA, 741 F. Supp. 988, 989 (D.D.C. 1990) (holding that agencies' processing of FOIA requests on a first-in, first-out basis satisfied the "exceptional circumstance" and "due diligence" requirements for stay); Ferguson v. FBI, 722 F. Supp. 1137, 1140 (S.D.N.Y. 1989) (extensions should be given when the court is "presented with evidence of an overburdened agency following necessary procedures") (citations omitted); Freeman v. Department of Justice, 822 F. Supp. 1064, 1066 (S.D.N.Y. 1993) (the court is "satisfied that [the FBI] is doing the best it can do within its physical limitations to process all requests in a timely manner").

---

the FBI to process hundreds of pages of documents.  The present case, by contrast, involves a request that requires the review of many times that amount of material.

## IV.  <u>CONCLUSION</u>

In view of the foregoing, defendant respectfully requests that an Order be issued staying

the pending proceeding for 27 months, or until May of 2009.

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney
PETER D. KEISLER
Assistant Attorney General
ELIZABETH J. SHAPIRO
Assistant Director


_____/s/_____
HEATHER PHILLIPS, CA Bar #191620
Trial Attorney
United States Department of Justice
Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20001
(202) 616-0679
Heather.phillips@usdoj.gov

30

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civ. A. No. 06-1708 (CKK) |
| vii. | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>ORDER</u>

UPON CONSIDERATION of defendant's Motion for an Open America Stay, it

is this ___ day of _____, 2007 hereby:

ORDERED that the Motion is GRANTED; and it is

FURTHER ORDERED that the defendant shall, on or before May 11, 2009, provide the

Court with a status report concerning defendant's processing of plaintiff's request under the

Freedom of Information Act ("FOIA").


SO ORDERED.


_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER FOUNDATION, )
)
    Plaintiff, )
)
      v. )    Civ. A. No. 06-CV-1708 (CKK)
)
U.S. DEPARTMENT OF JUSTICE, )
)
    Defendant. )
)

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at the Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July 21, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the state of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 203 employees who staff a total of ten (10) units and a field operational service center unit whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 12958, as

amended,[1] and the preparation of affidavits/declarations in support of Exemption 1 claims asserted under the FOIA.[2]  I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 12958, as amended, §§ 1.3 and 3.1.  The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, I am aware of the treatment which has been afforded the FOIA request of plaintiff, the Electronic Frontier Foundation for documents related to two electronic surveillance systems.  More specifically, plaintiff's August 11, 2006 FOIA request seeks access to records pertaining to the System DCS-3000 and Red Hook, and any reports made by the FBI to Congress on the FBI's use of these technologies.

(4)     The purpose of this declaration is to provide the Court and plaintiff with an overview of the FBI's RIDS, and an explanation for the delay associated with the FBI's processing of documents responsive to plaintiff's FOIA request.  For the reasons which will be discussed below in greater detail, the FBI is submitting this declaration in support of a stay of proceedings for approximately 27 months (three months for the case to rise to the top of the backlog queue and 24 months for processing), no later than May 31, 2009, in order to allow the FBI to complete the processing and release of documents responsive to plaintiff's request.

---

[1]     60 Fed. Reg. 19825 (1995) and 69 Fed. Reg. 15315 (2003).

[2]     5 U.S.C. § 552 (b)(1).

## OVERVIEW OF THE FBI'S FOIA/PRIVACY ACT BACKLOG

(5)     The number of FOIA and Privacy Act requests received by the FBI increased dramatically from the early 1980s.  The Freedom of Information and Privacy Acts ("FOIPA") Section [the predecessor to RIDS] began processing requests in 1975.  Initially overwhelmed by the number of requests, by 1981, the FBI had achieved a steady backlog between 4,000-7,000 requests.  Beginning in 1985, the unavailability of additional employees and a steady, large stream of new requests increased the backlog substantially until in 1996 there were in excess of 16,000 requests.  In 1996, the median time for a pending request was in excess of three years.

(6)     During the years that the backlog continued to grow, the FBI repeatedly sought additional funding for the creation of new FOIPA positions.  It was not until the 1997 fiscal year budget that Congress appropriated funds which provided for the funding of 129 additional employees, and in the 1998 fiscal year budget provided for the funding of 239 additional employees.  In 2002, RIDS moved to paperless processing through its FOIPA Document Processing System ("FDPS").  The FDPS allows the user to scan FBI files, documents, and correspondence, and enables the user to process pages electronically rather than manually.  RIDS is now using this system to process virtually all of its FOIA/Privacy Act requests.  The new process required the FBI to redistribute some of its FOIPA personnel to other sections within the RMD in order to support the scanning and archival services necessary for automated processing. Despite an additional reduction of RIDS personnel following September 11, 2001, to support the war on terrorism, the new efficiencies allowed the FBI to make great strides in reducing further its FOIA/Privacy Act backlog.  For example, the backlog of requests in RIDS in various stages of processing between December 31, 1996 and December 31, 2006, dropped from 16,244 to 1,672, resulting in a reduction of 14,572 requests.  The median time for a pending request dropped from 1,160 days on December 31, 1996, to 156 days on December 31, 2006.

(7)     During 2006, there was an increase in requests, up from an average of 911 per

month in 2005 to an average of 1,277 per month. Despite this increase, the FBI met or surpassed its primary goal of reducing the time required to process requests. The median time for processing small queue requests (less than 500 pages) decreased by 10%; the median time for processing medium queue requests (501 pages -2500 pages) decreased by 16%. However, the median time for the processing of large queue requests (over 2500 pages) increased by 22%. This increase was due to a concerted effort to reduce the backlog of the older, larger cases. This effort resulted in the number of pending large queue requests decreasing from 122 to 51.

(8)    RIDS has taken all possible steps - using available technologies - to aid in the streamlining and reduction of the FOIA/Privacy Act backlog. These include the use of direct on-line computer searches to locate responsive records, the use of forms which eliminate delays associated with word processing, the formation of specific teams to target backlog issues, the development of alternative methods to handle consultations with other government agencies, and the formation of the RIDS FOIPA LSU, which handles all FOIA/Privacy Act litigation. RIDS has a FOIPA Process Board and an Information Technology Change Management Board to improve existing processes, including the use of information technology enhancements to the existing automated processing system. These boards provide a systematic methodology to implement continuous process improvement for the future.

(9)    Currently, the FBI is taking two steps to update its technology and facilities that have the potential to reduce dramatically the amount of time it takes the FBI to respond to FOIA and Privacy Act requests: (a) development of the electronic investigative case file (the Sentinel Project) and (b) establishment of an FBI Central Records Complex. The Sentinel Project is an on-going, multi-year project that will result in the elimination of paper investigative case files. With an embedded Records Management Application ("RMA"), FBI employees will be able to search for and retrieve these records electronically. Concurrently, the FBI has begun the process of designing and building a new, state-of-the art Central Records Complex ("CRC") in Frederick

County, Virginia. This initiative will consolidate all closed FBI paper records from more than 265 different storage locations to one central site. When requested, paper records will be scanned and forwarded electronically. These initiatives will significantly improve RIDS"s search and record retrieval capabilities by increasing search accuracy, by decreasing search time, by reducing lost files and missing serials, and eliminating the manual movement of files. RIDS expects these initiatives, after they are fully implemented, to reduce by 40% the time required to process a FOIA/Privacy Act request. Phase One of the Sentinel Program is scheduled to be launched in the spring of 2007. During 2006, RIDS completed its first phase of moving to an interim facility in Frederick County, Virginia, to recruit and train new employees in anticipation of the construction of the CRC. While this move is essential to future FBI FOIA/Privacy Act operations, it has created significant strains on the FBI's FOIA/Privacy Act resources.

## STRAINS ON THE FBI'S FOIA RESOURCES

(10)    Two significant factors impact the FBI's ability to process recently located records: (a) the physical relocation of a portion of the Section's personnel and resources from FBIHQ to the interim facility in Frederick County, Virginia; and (b) several urgent and competing litigation deadlines, both of which will be discussed in further detail below.

### RMD Relocation to Frederick County, Virginia

(11)    The decision to locate the permanent CRC site in Frederick County, Virginia, is currently pending with the U.S. General Services Administration. The FBI has begun the temporary relocation of RMD sections to interim sites in Frederick County, Virginia, and will continue with a full relocation of its workforce once the permanent CRC is built and ready for occupancy, sometime around the year 2010. The interim sites are approximately 90 miles out of the Washington, D.C. Metropolitan area – about a 1 ½-hour drive from FBIHQ.

(12)    RIDS began relocation of its operations in February 2006 by establishing an advance team to prepare for the eventual relocation of RIDS in incremental stages. During the

summer of 2006, RIDS began the first phase by relocating five and one half of its ten FBIHQ unit functions to an interim site, specifically half of the Service Request Unit, and all of Work Process Unit One, Work Process Unit Two, FOIPA Unit One, FOIPA Unit Two, and Classification Unit Two. To ensure continuing RIDS operations during the move, half of the Service Request Unit function and the functions of FOIPA Unit Three, Classification Unit One, Classification Unit Three, and the Litigation Support Unit remain at FBIHQ. These FBIHQ units, with a total of 85 employees currently on board, consist of the most senior and experienced RIDS employees.

(13)    As evidenced by the FBI's 2006 FOIA/Privacy Act statistics, RIDS is making every effort to minimize disruption to operations during this transition period. This has been made all the more challenging as many employees have opted not to transfer with their unit function, opting to either retire or find other jobs rather than relocate to Frederick County, Virginia. Unfortunately, many of these employees were among the most senior and experienced in their area of expertise. Since RMD announced its off-site relocation plans, a total of 58 former RIDS employees have either resigned, retired, or found other jobs in the Washington, D. C. Metropolitan area, rather than relocate with their unit. To date, a total of 64 RIDS employees from FBIHQ have relocated with their unit to Frederick County, Virginia.

(14)    The FBI is engaged in aggressive and intense recruitment and hiring efforts in the Frederick County, Virginia area. In response to several recent postings for new hires, RIDS selected 333 individuals for interviews in June and November of 2005 and in January, February, March, August, October, and December of 2006, collectively. Of the 333 individuals selected for interviews, 82 candidates advised they were no longer interested prior to their interview; of the remaining 251 candidates interviewed, 94 either declined the initial offer of conditional employment following their interview or were disqualified during their background investigation; 35 employees have come on board; and the remaining are still pending in the background process. Past experience has shown that approximately 33% of those in FBI background

-6-

investigations successfully complete the hiring process. With approximately 203 employees currently on the rolls, RIDS is 115 positions under its funded staffing level of 311employees due to attrition and the reasons explained in & 13, supra. In addition, in light of the continuing resolution pursuant to which much of the federal government is operating, and which has resulted in a hiring freeze until further notice, RMD may not be able to hire any new support employees in the immediate future. The new RIDS employees who have less than one year of experience are in various stages of professional development, but none are yet operating as experienced employees. It takes an average of three years to adequately train a new employee in the FOIA/PA process to be able to work independently in a productive, efficient, and effective manner. Accordingly, RIDS has only a limited number of experienced employees processing FOIA/PA requests at this time.

### Pending FOIA Litigations

(15)    Simultaneously with this resource drain, RIDS has experienced a significant increase in its FOIA litigation workload, including several urgent and competing federal district court litigation deadlines:

(16)    In Gerstein v. CIA, et al., Civ. A. No. 06-4643 (N.D. Cal.), plaintiff seeks, inter alia, access to all documents related to criminal referrals submitted to the U.S. Department of Justice or the FBI since January 1, 2001 regarding unauthorized disclosures of classified information to the press or public. The Court has ordered the FBI to expedite plaintiff's request, which has resulted in the FBI's intense search and identification of over 2,500 pages of potentially responsive records, with the search still ongoing. The FBI sought and received an additional 120 days from the original date of January 5, 2007, initially ordered by the court to complete its review and processing of this material. The FBI must now review, process and release over 2,500 pages by April 27, 2007.

(17)    In the FBI's largest FOIA litigation in its history, Rosenfeld v. U.S. Department of

Justice, et al., Civ. A. Nos. 90-3576-MHP, 85-1709-MHP and 85-2247-MHP (N.D. Cal.), the

FBI has been ordered to conduct hand searches of its COINTELPRO files for numerous subjects

and to open 13 new FOIA requests on individual subjects. In order to comply with these

demands, the FBI has again had to realign its personnel resources and has made a substantial

commitment of resources to address these court-ordered issues.

(18)    In Hidalgo v. FBI, Civ. A. No. 06-CV-1513 (D.D.C.), the FBI has had to review

and process over 3,000 pages of documents responsive to plaintiff's request for documents

related to an acknowledged FBI informant, with a completion date of March 16, 2007.

(19)    In Vampire Nation v. Dept of Justice, et al., Civ. A. No. 06-CV-01950 (D.D.C.),

the FBI is requesting an Open America stay from the Court in the next several weeks. If these

requests are either denied by the Court or the requested time is substantially reduced, additional

shifting of already strained employee resources will become necessary.

(20)    In the past, the backlog in RIDS has been exacerbated by the high volume of

administrative appeals which require review and response by the RIDS personnel. RIDS

personnel work closely with the staff of the U.S. Department of Justice, Office of Information

and Privacy ("OIP") to review and assist with OIP's responses and determinations regarding

pending appeals. During 2006, the FBI received a total of 1015 administrative appeals. As of

January 31, 2007, 525 administrative appeals were pending resolution. While this number does

not represent an increase, the aggregate number of appeals remains another significant drain on

resources because inevitably, the time spent by RIDS personnel handling these appeals reduces

the amount of time that they are able to devote for regular processing duties.

## HOW A FOIA REQUEST IS PROCESSED IN RIDS

(21)    Over the years, FOIA management at FBIHQ has continuously re-engineered the

process of responding to FOIA/Privacy Act requests in an effort to better serve the needs of

requesters who seek information from the FBI. In 2002, reorganization of various divisions at

FBIHQ resulted in the formation of the RMD, which now handles all FOIA/Privacy Act requests through the RIDS. These most recent re-engineering efforts have resulted in a new organizational plan which will be discussed in more detail below.

(22)    The mission of RIDS is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information. RIDS provides program and policy management that pertains to the research, review, analysis, processing, and classification/declassification work related to the FOIA and Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. RIDS also provides prepublication review of material written by current and/or former FBI employees concerning FBI matters as mandated by the FBI's employment agreement, executes the FBI's historic declassification program, and assists in managing defense discovery efforts in large counterterrorism criminal trials. RIDS currently employs approximately 203 personnel, most of whom are Legal Administrative Specialists ("LASs"), and who are assigned among the 11 units within RIDS. RIDS employees intake, review, process, and release information in response to FOIA and Privacy Act requests. To accomplish this mission, RIDS consists of the following 11 Units: one Service Request Unit ("SRU"), two Work Process Units ("WPU"), three Classification Units ("CU"), four FOIPA Units ("FOIPA Disclosure Units"),[3] and the Litigation Support Unit ("LSU").

(a)    The Service Request Unit ("SRU") is composed of the Negotiation Team, which works with individuals whose requests generate a large volume of records in an attempt to narrow the scope of responsive records and facilitate a more rapid response. Since 1995, this team has eliminated over 13 million pages from FOIA/Privacy Act requests. The Unit has a RIDS Public Information Official, who is responsible for assisting requesters with issues

---

[3]    One of the four FOIPA Disclosure Units operates at an off-site location in Savannah, Georgia.

concerning their request. The Government Response Team ("GRT"), also a part of SRU, provides timely feedback to other federal agencies and other DOJ components with regard to referrals of documents which are either FBI-originated or contain FBI-originated information.[4] Referred documents are sent to the FBI for consultation or for direct response to the requester. Finally, SRU handles administrative appeals and criminal discovery matters.

      (b)   <u>Work Process Units</u>

      (i)   The two Work Process Units ("WPUs") are responsible for reviewing and sorting all correspondence/incoming requests for information from the public, Congress, Presidential Libraries, foreign governments, other federal and state agencies, and other FBI entities (<u>i.e.</u>, FBI field offices, Legats). The WPUs handle various initial tasks required to "perfect" a FOIA/Privacy Act request, including sending letters to acknowledge requests, advising a requester to provide identifying data so that an accurate records search can be made and/or to submit a notarized signature/Privacy Act waiver, and advising a requester when no responsive records are located. The WPUs also open new requests, assign a FOIA/Privacy Act Request Number, and enter the perfected requests into the FDPS tracking system. The WPUs are responsible for preparing perfected requests for transfer to the four Disclosure Units. A request is considered "perfected" when all administrative tasks have been completed and all responsive documents have been scanned into FDPS. Once a request has been "perfected," it is placed in the backlog for assignment to a FOIPA Disclosure Unit for processing. The WPUs conduct searches of the general indices for identifiable records, confirm responsive documents, stamp files for retention, address fee issues (other than fee waiver reviews), retrieve and forward files for scanning into FDPS, respond to status inquiries, and maintain requests prior to their transfer to

---

[4]    The Government Response Team ("GRT") was formerly known as the "Government Response & Prepublication Review Unit." However, an internal reorganization resulted in shifting the GRT and its functions to the SRU, and shifting the Prepublication Review Team to the RIDS front office.

the Disclosure Units.

       (ii)    After the WPUs perfect a request, it is sent to the "perfected

backlog." To ensure fairness to all requesters and to equitably administer the deluge of

FOIA/Privacy Act requests received by the FBI, a request is assigned based on the date of receipt

on a "first in/first out" basis within each of three queues according to sound administrative

practices.[5] The FBI uses a three-queue system as a way to fairly assign and process new

requests.[6] The three-queue system established "multi-track" processing for requests, based on the

amount of time and work involved in handling a particular request.[7] The system nevertheless

preserves the principle that, within the three queues, requests are still assigned and processed on

a first-in/first out basis. The placement of a request in one of the three queues depends on the

total amount of material responsive to that request - 500 pages or less ("small queue"), 501 to

2,500 pages ("medium queue"), or more than 2,500 pages ("large queue"). This standard

operating procedure, coupled with the FBI's "first in/first out" policy, permits requests to be

addressed in the order in which they are received, while obviating the inequities to other

requesters whose interests relate only to a small number of documents. As described earlier,

individuals whose requests have been placed in the large queue are given the opportunity,

through contact with SRU's Negotiation Team, to reduce the scope of their requests and

accelerate assignment of their requests by relocating them to a more advantageous queue.

       (b)    <u>Classification Units</u>: The three Classification Units ("CUs") are

responsible for complying with the classification/declassification review of FBI records under

Executive Order 12958, as amended, and for conducting mandatory declassification review

---

[5]    <u>See</u> 28 C.F.R. § 16.5(a).

[6]    This system went into effect on July 10, 1997, superseding the previous system of two queues (one for 100 pages or less, the other for requests greater than 100 pages).

[7]    <u>See</u> 5 U.S.C. § 552(a)(6)(D)(I) and 28 C.F.R. § 16.5(b).

consistent with Executive Order 12958, as amended.  The CUs review documents responsive to

FOIA/Privacy Act requests, criminal and civil discovery requests, Congressional and Presidential

mandates, Presidential Library requests, mandatory declassification requests, Office of Inspector

General Reports, and other federal agency requests in order to determine whether such material

should remain classified or be declassified.  In addition, the CUs review and prepare classified

material for review by the Department of Justice Review Committee ("DRC").[8]

    (c)  FOIPA Units: The four FOIPA "Disclosure" Units perform the actual

processing of records pursuant to the provisions of the FOIA and Privacy Act.  "Processing"

involves a page-by-page, line-by-line review of the responsive documents to determine which, if

any, FOIA and/or Privacy Act exemptions may apply.  This includes redaction of the exempt

material and notation of the applicable exemption(s) in the margin of each page and/or

preparation of deleted page information sheets when pages are withheld in their entireties, which

is now done electronically in FDPS.  During the course of their review, the Disclosure Units

consult with other government agencies for their determination as to the releasability of the other

agency's information contained within FBI records, or refer non-FBI documents to those

originating agencies for processing and direct response to the requester.  The Disclosure Units

ensure that FOIA and/or Privacy Act exemptions have been applied properly, no releasable

material has been withheld, no material meriting protection has been released, all necessary

classification reviews have been completed by transferring applicable cases to the CUs, and other

government agency information and/or entire documents originating with other government

agencies have been properly handled.

    (d)  Litigation Support Unit: The Litigation Support Unit ("LSU") is

---

[8]  The DRC is the FBI's appellate authority with regard to the implementation and
administration of Executive Order 12958, as amended, and related directives and guidelines
concerning classified information.  See 28 C.F.R. § 17.14.

responsible for providing legal support and administrative assistance to the FBI's Office of the

General Counsel and Chief Division Counsels and Assistant Division Counsels in the FBI's field

offices, in all FOIA/Privacy Act requests that result in federal litigation. The LSU coordinates

the progress of the FBI's response to a particular FOIA/Privacy Act request as it progresses

through the units described above, the receipt of substantive litigation-related information from

involved FBI Special Agents ("SAs") in the field offices and the operational Divisions at FBIHQ,

and the referral of documents to other DOJ components and government agencies. The LSU

prepares the administrative record, drafts both procedural and substantive declarations, codes

documents processed by the Disclosure Units,[9] and drafts detailed declarations justifying the

assertion of all applicable FOIA/Privacy Act exemptions.

(23)    To promote administrative efficiency, LASs work on more than one request at a

time. Certain cases may require that the usual processing be halted midstream. This can occur

for a variety of reasons, including the resolution of classification issues, the location of additional

records, or consultation with other government agencies as to the nature and propriety of

releasing certain information. In the interest of efficiency during this waiting period, the LAS

may fully process other requests. Large requests are often processed on parallel tracks with

smaller requests in an attempt to ensure that one requester does not consume a disproportionate

share of RIDS resources.

(24)    Consistent with standard administrative procedure, any records referred to the FBI

---

[9]    A coded format is used in cases to assist the Court and parties in reviewing information
which the FBI withholds within the context of processed documents. Each instance of
information withheld pursuant to the FOIA is accompanied by a coded designation that
corresponds to specified categories. For example, if "(b)(7)(C)-1" appears on a document, the
"(b)(7)(C)" designation refers to Exemption (b)(7)(C) of the FOIA, which concerns
"Unwarranted Invasion of Privacy." The numerical designation "(-1)" following the "(b)(7)(C)"
narrows the main category to the more specific subcategory, " Names and/or Identifying Data of
Third Parties Merely Mentioned." Although adding codes is a time-consuming process, it helps
the Court and the parties in those jurisdictions that accept coded declarations to more clearly
explain the nature of the withheld material.

from other DOJ components or other government agencies in response to a particular request are added to that pending FOIA/Privacy Act request. This process is an equitable way for RIDS to maintain administrative control of FOIA/Privacy Act requests. Under this system, the same LAS assigned to process a particular request will also handle the review of records referred by other DOJ components or government agencies. By ensuring continuity in the processing of FOIA requests, this system is not only fair to all persons seeking information under the FOIA, but is also administratively efficient.

## CHRONOLOGY OF PLAINTIFF'S FOIA REQUEST

(25)    By letter dated August 11, 2006 addressed to the FBI, Marcia Hoffman submitted a FOIA request on behalf of plaintiff, the Electronic Frontier Foundation ("EFF"), for "[a]ll records (including, but not limited to, electronic records) concerning electronic surveillance systems known as DCS-3000 and Red Hook, to include any reports made by the FBI to Congress on the Bureau's use of these technologies." In its letter, EFF also requested a waiver of all duplication and search/review fees associated with this FOIA request. (**See Exhibit A**).

(26)    By two separate letters both dated August 22, 2006, FBIHQ acknowledged receipt of plaintiff's FOIA request, and notified plaintiff that the request for DCS-3000 and Red Hook had been assigned FOIPA Request Nos. 1056287-000 and 1056307-000, respectively. (**See Exhibit B.)**

(27)    By letter dated August 30, 2006, FBIHQ advised plaintiffs that a search of the automated indices to the FBI's Central Records System ("CRS") located no main Headquarters files responsive to its DCS-3000 request.[10] Plaintiff was also advised that it could appeal the FBI's determination to the U.S. Department of Justice, Office of Information and Privacy

---

[10]    FBIHQ conducted a similar search for plaintiff's request for "Red Hook" documents, and that search located one responsive main Headquarters file. That file will be processed along with the other responsive records located as a result of the further search described in ¶ 37 infra.

-14-

("OIP").[11]  (See Exhibit C).

(28)     By letter dated January 9, 2007, FBIHQ provided plaintiff with documentation of a telephone conversation between a RIDS employee and plaintiff's counsel, Marcia Hofmann. This letter reiterated that:

> (a) the records found to be responsive to plaintiff's requests totaled approximately 20,000 pages; and
>
> (b) the FBI, in discussions with Ms. Hofmann, attempted to narrow the scope of the request in order to reduce the numbers of potentially-responsive records, thereby accelerating the processing, but these efforts were unsuccessful.

(See Exhibit D).

## EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

(29)     The Central Records System ("CRS") enables the FBI to maintain all information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes.  CRS is organized into a numerical sequence of files, called FBI "classifications," which are broken down according to subject matter.  The subject matter of a file may correspond to an individual, organization, company, publication, activity, or foreign intelligence matter (or program).  Certain records in the CRS are maintained at FBIHQ, whereas records that are pertinent to specific field offices of the FBI are maintained in those field offices.  While the CRS is primarily designed to serve as an investigative tool, the FBI searches the CRS for documents that are potentially responsive to FOIA/Privacy Act requests.

---

[11]     Documents responsive to plaintiff's request were later located as a result of documents identified in response to an Electronic Communication ("EC"). This EC was addressed to all FBIHQ divisions believed most likely to possess records potentially responsive to plaintiff's request, and directed each office to conduct a search of their records for that potentially responsive material.

The mechanism that the FBI uses to search the CRS is the Automated Case Support System ("ACS").

(30)    On or about October 16, 1995, the Automated Case Support ("ACS") system was implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ in order to consolidate portions of the CRS that were previously automated.  ACS can be described as an internal computerized subsystem of the CRS.  Because the CRS cannot electronically query the case files for data, such as an individual's name or social security number, the required information is duplicated and moved to the ACS so that it can be searched.  More than 105 million records from the CRS were converted from automated systems previously utilized by the FBI.  Automation did not change the CRS; instead, automation has facilitated more economic and expeditious access to records maintained in the CRS.

(31)    The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order.[12]  The entries in the General Indices fall into two categories:

> (a) A "main" entry – A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.

> (b) A "reference" entry – "Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

(32)    Searches made in the General Indices to locate records concerning a particular subject, such as DSC-3000 and Red Hook, are made by searching the subject requested in the index.

(33)    The ACS consists of three integrated, yet separately functional, automated

---

[12]    The General Indices, which became fully automated on September 24, 1987, also include index cards which allow a manual search for records prior to that date.

-16-

applications that support case management functions for all FBI investigative and administrative cases:

        (a) Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case. The field offices that receive leads from the OO are referred to as Lead Offices ("LOs"). When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by all FBIHQ, as well as all FBI field offices and Legats that are conducting or assisting in the investigation. Using the fictitious file number "100-HQ-12345," as an example, an explanation of the UCFN is as follows: "100" indicates the classification for the specific type of investigation; "HQ" is the abbreviated form used for the OO of the investigation, which in this case is FBIHQ; and "12345" denotes the individual case file number for the particular investigation.

        (b) Electronic Case File ("ECF") – ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept in that only the creator of a document serializes it into a file. This provides a single-source entry of serials into the computerized ECF system. All original serials are maintained in the OO case file.

        (c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 97.6 million records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.

      (34)    The decision to index names other than subjects, suspects, and victims is a

discretionary decision made by the FBI Special Agent ("SA") – and on occasion, support employees – assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, i.e., DCS-3000 and Red Hook.

### SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST

(35)    In this case, the FBI has employed several mechanisms as part of its search efforts to identify documents responsive to plaintiff's request. As a threshold matter, it is important to note that the nature of the current FOIA request does not lend itself readily or naturally to the searches that the FBI routinely conducts in response to FOIA requests seeking access to FBI investigative files. This is particularly the case where the subject matter of the request is relatively recent, and responsive records may not have yet been indexed to the FBI's CRS. As a result, the FBI initiated a standard search of records in the CRS, as well as an individualized inquiry of the most logical offices at FBIHQ which could have potentially responsive records.

(36)    On August 28, 2006, the RIDS staff initiated a search in the CRS for records responsive to plaintiff's request. The specific search inquiry in CRS included the following search terms: "DCS 3000," and "Red Hook." The date parameters for the search were for records created on or before August 28, 2006. The scope of the search included the Automated Data Base ("ADB"). The search sought main files and cross-references, whether security or criminal.

-18-

As a result of this CRS search, FBIHQ identified no responsive main files for DCS 3000 and one main file for Red Hook.

(37)    In addition, RIDS prepared and circulated an Electronic Communication ("EC") to those FBIHQ divisions and offices most likely to possess potentially responsive records requesting all personnel to conduct a thorough search of any documents in their possession, including unserialized copies and e-mails responsive to plaintiff's request.[13] RIDS personnel contacted those FBIHQ offices most likely to possess responsive documents, including: Critical Incident Response Group, Criminal Justice Information Services, Counterintelligence, Counterterrorism, Criminal Investigative, Cyber, Directorate of Intelligence, Office of the General Counsel, Inspection, Information Technology Program Management, Operational Technology, Law Enforcement Coordination, and Records Management Division. Individuals in all of these offices have undertaken searches of their files for responsive records, including, but not limited to, responsive e-mails. Given the nature of plaintiff's request, which seeks documents related to electronic surveillance systems known as "DCS 3000" and "Red Hook," the individuals who conducted these particular searches are those individuals most likely to possess responsive records or who have knowledge as to where responsive records could be located. Any suggestions or logical leads regarding potentially responsive documents have been followed.

(38)    As a result of these search efforts, which are now complete, a total of approximately 20,000 pages of records potentially responsive to plaintiff's request have been located.

(39)    The responsive documents are being scanned into electronic format and will be forwarded to the "perfected" case backlog for assignment to a FOIPA processing analyst. Based on the page count of approximately 20,000, plaintiff's request will be placed in the large queue of

---

[13]    For administrative convenience, the two requests were combined into one search EC and were treated as if they were one request.

the "perfected" case backlog. As explained earlier, in order to ensure fairness to all requesters and to administer equitably the deluge of FOIA/Privacy Act requests received by the FBI, a request is assigned based on the date of receipt on a "first in/first out" basis from within each of three queues according to sound administrative practices. Based on the date of this request – August 11, 2006 – there are approximately five (5) requests, which total 35,801 pages, pending ahead of plaintiff's request in the large queue. The FBI anticipates that the earliest plaintiff's request will be assigned to a FOIPA Disclosure Unit for processing is in approximately three (3) months, which is the estimated time for this request to rise to the top of the queue.[14] The FBI will be able to review and process approximately 800 pages every four (4) weeks, and anticipates that it will require a total of approximately twenty-four (24) months to review and process the responsive documents. Due to the volume and complexity of the material, which consists of a number of highly technical documents, as well as lengthy email trails, the FBI will release documents on a rolling basis. As the processing of a significant number of documents is completed, the FBI will make releases approximately every four (4) weeks until the production is complete, rather than delay the release until the entire production is ready.

(40)    The FBI takes its responsibilities with regard to the administration of the FOIA/Privacy Act program very seriously, and all reasonable efforts are being made to comply with the statutory deadlines. Regrettably, compliance with these deadlines is often not possible. However, as explained supra, the FBI has made tremendous strides in reducing its backlog over time. A reduction in pending requests has occurred even while the FBI continues to receive hundreds of new FOIA/Privacy Act requests. Nevertheless, the most equitable way to reduce the backlog and ensure that each request receives the attention it deserves is to process these requests

---

[14]    Once the FBI and/or DOJ grants a request for expedited processing, that request is moved to the head of the backlog queue. As a result, a request which has been granted expedition could conceivably jump ahead of plaintiff's request as would any perfected request with a date antecedent to that of plaintiff's.

based on the date of receipt according to sound administrative practices as explained above. It would be unfair to assign plaintiff's request for processing before other individuals whose requests were in the queue ahead of plaintiff. Each court order which requires that one request be given priority ahead of the others invariably works to the detriment of the other more patient requesters and encourages other requesters to seek relief in the courts, thereby undermining the FBI's attempt to manage the thousands of FOIA/Privacy Act requests it receives annually in a fair and consistent fashion.

(41)    For the above reasons, the FBI submits this declaration in support of its request in support of a stay of proceedings for approximately 27 months, no later than May 31, 2009, in order to allow the FBI to complete the processing and release of those documents responsive to plaintiff's request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through D attached hereto are true and correct copies.

Executed this _____ day of February, 2007.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER FOUNDATION,    )
                                   )
            Plaintiff,             )
                                   )
       v.                          )
                                   )        Civ. A. No. 06-CV-1708 (CKK)
                                   )
U.S. DEPARTMENT OF JUSTICE,        )
                                   )
         Defendant.                )
                                   )

# EXHIBIT   A



**Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

1875 Connecticut Avenue, NW • Suite 650 • Washington, DC 20009 USA
202.797.9009 (v) • 202.797.9066 (f) • www.eff.org • information@eff.org

August 11, 2006

**BY FACSIMILE — (202) 324-3752**

David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Avenue NW
Washington, DC 20535-0001

              RE:    Freedom of Information Act Request

Dear Mr. Hardy:

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Federal Bureau of Investigation ("FBI") on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

We are seeking all agency records (including, but not limited to, electronic records) concerning electronic surveillance systems known as DCS-3000 and Red Hook. Please interpret this request to include any reports made by the FBI to Congress on the Bureau's use of these technologies.

According to a report published earlier this year by the Department of Justice Inspector General:

> System DCS-3000. The FBI has spent nearly $10 million on this system. The FBI developed the system as an interim solution to intercept personal communications services delivered via emerging digital technologies used by wireless carriers in advance of any CALEA solutions being deployed. Law enforcement continues to utilize this technology as carriers continue to introduce new features and services.
>
>                    *        *        *
>
> Red Hook. The FBI has spent over $1.5 million to develop a system to collect voice and data calls and then process and display the intercepted information in the absence of a CALEA solution.[1]

---

[1] Dep't of Justice, Office of the Inspector General, Audit Division, Audit Report No. 06-13, *The Implementation of the Communications Assistance for Law Enforcement Act* 107 (March 2006), *available at* http://www.usdoj.gov/oig/reports/FBI/a0613/final.pdf.

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a representative of the news media pursuant to the FOIA and 28 C.F.R. § 16.11(b)(6).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil liberties in the digital age."[2]  One of EFF's primary objectives is "to educate the press, policymakers and the general public about online civil liberties."[3]  To accomplish this goal, EFF routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received 38,858,298 hits in July 2006 — an average of 52,228 per hour.  The web site reports the latest developments and contains in-depth information about a variety of civil liberties and intellectual property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990.  The EFFector currently has more than 77,000 subscribers.  A complete archive of past EFFectors is available at http://www.eff.org/effector/.

Furthermore, EFF publishes two blogs that highlight the latest news from around the Internet.  DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in technology, while miniLinks (http://www.eff.org/minilinks/) directs readers to other news articles and commentary on these issues.  DeepLinks had 817,993 hits in July 2006; miniLinks received 436,043 hits during the same period.[4]

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002.  These papers, available at http://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties issues.  *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com).  EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com).  Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public.  The book is available online at http://cryptome.org/cracking-des.htm and for sale at Amazon.com.

---

[2] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/pqShowGsReport.do?npoId=561625 (last visited Aug. 9, 2006).

[3] *Id.*

[4] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

2

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation, and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These podcasts were downloaded about 5,000 times from EFF's web site last month.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.11(k). To determine whether a request meets this standard, the FBI determines whether "[d]isclosure of the requested information is likely to contribute significantly to public understanding of the operations or activities of the government," and whether such disclosure "is not primarily in the commercial interest of the requester." 28 C.F.R. §§ 16.11(k)(i), (ii). This request clearly satisfies these criteria.

First, the FBI's development and use of Internet surveillance technology concerns "the operations or activities of the government." 28 C.F.R. § 16.11(k)(2)(i). The Bureau is a government agency. Therefore, its surveillance of communications unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will "contribute to an understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(ii) (internal quotation marks omitted). EFF has requested information that will shed light on the FBI's development of electronic surveillance technology, as well as its functionality and the extent of its use.

Third, the requested material will "contribute to public understanding" of the extent to which the FBI uses DCS-3000 and Red Hook. 28 C.F.R. § 16.12(k)(2)(iii) (internal quotation marks omitted). This information will contribute not only to EFF's understanding of the FBI's surveillance activity, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

Fourth, the disclosure will "contribute significantly" to the public's knowledge and understanding of the FBI's development and use of DCS-3000 and Red Hook. 28 C.F.R. § 16.11(k)(2)(iv) (internal quotation marks omitted). Little is publicly known about these technologies and how the Bureau uses them, so disclosure of this information will help inform the public about DCS-3000 and Red Hook, as well as contribute to the public debate about the FBI's electronic surveillance activities.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 28 C.F.R. § 16.11(k)(3). EFF is a 501(c)(3) nonprofit organization, and will derive no commercial benefit from the information at issue here.

3

Thank you for your consideration of this request. If you have any questions or concerns, please do not hesitate to contact me at (202) 797-9009 x. 12. As the FOIA provides, I will anticipate a determination on this request from your office within 20 working days.

Sincerely,

Marcia Hofmann
Staff Attorney

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER FOUNDATION,    )
                                   )
            Plaintiff,             )
                                   )
        v.                         )
                                   )        Civ. A. No. 06-CV-1708 (CKK)
                                   )
U.S. DEPARTMENT OF JUSTICE,        )
                                   )
        Defendant.                 )
_____)

# EXHIBIT   B



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

August 22, 2006

MARCIA HOFMANN, ESQ.
ELECTRONIC FRONTIER FOUNDATION
SUITE 650
1875 CONNECTICUT AVENUE, NORTHWEST
WASHINGTON, DC 20009

Request No.: 1056287- 000
Subject: SYSTEM DCS-3000

Dear Requester:

☒    This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request to the FBI. The FOIPA number listed above has been assigned to your request.

☐    For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐    To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐    If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☒    We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐    Processing delays have been caused by the large number of requests received by the FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division



U.S. Department of Justice

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

August 22, 2006

MARCIA HOFMANN , ESQ.
ELECTRONIC FRONTIER FOUNDATION
SUITE 650
1875 CONNECTICUT AVENUE, NORTHWEST
WASHINGTON, DC 20009

Request No.: 1056307- 000
Subject: RED HOOK

Dear Requester:

☒ This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request to the FBI. The FOIPA number listed above has been assigned to your request.

☐ For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐ To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐ If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☒ We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐ Processing delays have been caused by the large number of requests received by the FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civ. A. No. 06-CV-1708 (CKK) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# EXHIBIT   C



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

MARCIA HOFMANN, ESQ                                  August 30, 2006
ELECTRONIC FRONTIER FOUNDATION
SUITE 650
1875 CONNECTICUT AVENUE, NW
WASHINGTON, DC  20009

Request No.:  1056287- 000
Subject:  SYSTEM DCS-3000

Dear Requester:

This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above.

To promptly respond to requests, we concentrate on identifying main files in the central records system at FBI Headquarters. No records responsive to your FOIPA request were located by a search of the automated indices.

You may file an administrative appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

Enclosed for your information is a copy of the FBI File Fact Sheet.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER FOUNDATION,    )
                                   )
        Plaintiff,                 )
                                   )
        v.                         )
                                   )    Civ. A. No. 06-CV-1708 (CKK)
                                   )
U.S. DEPARTMENT OF JUSTICE,        )
                                   )
        Defendant.                 )
_____    )

# EXHIBIT   D



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

ESQ. MARCIA HOFMANN                                   January 9, 2007
ELECTRONIC FRONTIER FOUNDATION
SUITE 650
1875 CONNECTICUT AVENUE, NORTHWEST
WASHINGTON, DC 20009

Request No.:   1056287- 000 and
1056307
Subject:   SYSTEM DCS-3000 and
RED HOOK

Dear Ms. Hofmann:

Reference is made to your Freedom of Information Act (FOIA) requests for FBI Headquarters
(FBIHQ) records concerning System DCS 3000 and Red Hook.   This letter will serve to document your
telephone conversations with my representative, Mr. Loren Shaver, on December 19, 2006, and January
9, 2007.

Mr. Shaver explained to you that the records responsive to your requests totaled approximately
20,000 pages.  He described to you, in very basic terms, the general types of records we had identified
and retrieved for your requests, and inquired if your clients would be interested in excluding any of these
records from the requests in order to accelerate the assigning and processing of the requests.

After considering this option, you advised Mr. Shaver that your clients did not wish to reduce their
FOIA requests, but, rather, wished to receive all of the responsive records.

We certainly appreciate your consideration in this matter and we solicit your continued patience.
If you have any further questions concerning your request or the responsive materials, you may telephone
Mr. Shaver @ 540-868-4839.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information Dissemination Section
Records Management Division