UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER )
FOUNDATION, )
 )
    Plaintiff, )
 ) Civ. A. No. 06-1708 (CKK)
    v. )
 )
DEPARTMENT OF JUSTICE, )
 )
    Defendant. )
_____)

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR AN OPEN AMERICA STAY**

**INTRODUCTION**

Plaintiff has opposed defendant's motion for a stay of proceedings pursuant to 5 U.S.C. §

552(a)(6)(C), and Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C.

Cir. 1976), claiming that defendant "has failed to make the showing necessary." Plaintiff's

Opposition ("Pl. Opp.") at 1. Plaintiff argues that "defendant has not carried its burden of

showing that it is entitled to an Open America stay by offering plaintiff an opportunity to narrow

its request," and that defendant has likewise failed to show that "exceptional circumstances

exist" and that it is "exercising due diligence" in processing plaintiff's FOIA request. Pl. Opp. at

6-13. Plaintiff is wrong on all counts. As an initial matter, whether or not defendant is entitled

to an Open America stay is not contingent upon whether plaintiff has been afforded an

opportunity to narrow its request. Nonetheless, plaintiff was afforded such opportunity, and

declined to do so. That plaintiff declined to narrow its request supports defendant's motion for

an Open America stay. In addition, the Declaration of David M. Hardy, Section Chief of the

Record/Information Dissemination Section ("RIDS"), Records Management Division of FBI

1

Headquarters, attached as Exhibit 1 to defendant's motion, amply demonstrates that a stay of proceedings in this matter is warranted, as exceptional circumstances exist, and the FBI has exercised due diligence in reducing its FOIA/PA backlog and in handling plaintiff's FOIA request.

In this regard, and as required for an <u>Open America</u> stay, the FBI is processing plaintiff's request in accordance with established policies that allow for the equitable and orderly processing of FOIA requests on a first-in/first-out basis. Although the FBI has a backlog of pending FOIA requests, it is making substantial efforts to reduce the backlog and has achieved significant reductions in backlog and processing time. Nevertheless, the volume of potentially responsive records in this case, the large number of pending requests that pre-date plaintiff's request, and the limited resources currently available to the FBI for the processing of FOIA requests, constitute exceptional circumstances necessitating a stay so that the FBI may complete its review of the records.

## DISCUSSION

**I.** **Defendant is Not Required to Afford Plaintiff an Opportunity to Narrow its Search, But When Given Such Opportunity, Plaintiff's Refusal Supports Defendant's Motion for an Open America Stay**

In its opposition to defendant's motion for an <u>Open America</u> stay, plaintiff asserts that "defendant failed to meet its burden of showing that it is entitled to an <u>Open America</u> stay by offering plaintiff an opportunity to narrow its request." Pl. Opp. at 6. Plaintiff misunderstands the statute and the burdens imposed upon a requestor. In pertinent part, 5 U.S.C. § 552(a)(6)(C) provides:

> (iii) Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing the request (or a modified request) under clause (ii) after being given an opportunity to do so by the agency to whom the

person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

See 5 U.S.C. § 552(a)(6)(C)(iii).

Thus, the statute contains no mandatory language – or "burden," to use plaintiff's term -- that an agency grant a requestor an opportunity to narrow its search.  Instead, the statute only provides that if the agency decides to allow such an opportunity, a requestor's refusal to do so "shall be considered a factor in determining whether exceptional circumstances exist."  Id.  This is precisely the case here.  The FBI informed plaintiff that the records found to be potentially responsive to plaintiff's requests totaled approximately 20,000 pages.[1]  Hardy Decl. at Exhibit D. Given the large volume of potentially responsive documents, the FBI requested that plaintiff limit the scope of the documents requested, but plaintiff declined to do so.  Id.  Under the express language of the statute, the Court should consider plaintiff's refusal in assessing the FBI's motion for an Open America stay.  See 5 U.S.C. § 552(a)(6)(C)(iii).

## II.    Exceptional Circumstances Exist Warranting a Stay of 27 Months

Plaintiff argues that the FBI has failed to establish exceptional circumstances, relying principally on language in Leadership Conference on Civil Rights v. Gonzales, 404 F. Supp. 2d

---

[1]  Puzzlingly, plaintiff asserts that it "declined the FBI's invitation to narrow its request . . . because the number of potentially responsive pages was so indefinite," but at the same time admits that defendant informed plaintiff that the FBI had identified 20,000 pages of potentially responsive documents.  Pl. Opp. at 7.  Plaintiff then claims that it is entitled to decline to narrow its search because in its prior dealings with the FBI, the numbers of responsive documents were far fewer than the initial number of "potentially responsive documents" identified.  Id.  Plaintiff asserts that it "remains open to discussing ways to narrow the scope of its request . . . once the amount and substance of the responsive records are clearly defined."  Pl. Opp. at 7.  Plaintiff misunderstands the review process.  Notwithstanding that some documents may end up being non-responsive, the FBI must still review all potentially responsive documents to make that determination.  It is this review of 20,000 potentially-responsive documents that will require a significant period of time, and which necessitates an Open America stay.

.

3

246 (D.D.C. 2005), wherein the court noted that it did not intend to delve into defendants'

"personnel and project management difficulties."  Id. at 259.  The decision in Leadership,

however, neither explained nor described these difficulties, and it appears that the agency failed

to elaborate upon them as well.  Id.  In addition, the court in Leadership found that defendants

had "shown [only] a predictable backlog of FOIA request[s] . . . [and had] not convinced the

Court that they are acting with due diligence to decrease their backlog."   This is decidedly not

the case here.  For example, plaintiff fails to address the fact that during 2006 there was an

increase in FOIA requests, up from an average of 911 per month in 2005 to an average of 1,277

per month.  Hardy Decl. at ¶ 7.

        Moreover, the unprecedented and unexpected personnel shortages the FBI is

experiencing are the result of measures taken that will ultimately serve to dramatically reduce

FOIA/PA processing time.  These include the development of the electronic investigative case

file (the Sentinel Project), and the establishment of an FBI Central Records Complex in

Fredericksburg, Virginia.  Hardy Decl. at ¶¶ 8-9.  While RIDS has transferred more than half of

its unit functions to an interim site in Fredericksburg, Virginia, many of the employees in those

units, who are among the most senior and experienced in their areas of expertise, have opted to

retire or find other jobs rather than relocate.  Id. at ¶ 13.  The FBI is engaged in aggressive

recruitment efforts, but these take time, and the even once new hires are made, it takes an

average of three years to adequately train them in the FOIA/PA process to be able to work

independently in a productive, efficient, and effective manner.  Id. at ¶ 14.  Nonetheless, the FBI

expects these initiatives, after they are fully implemented, to reduce current processing times by

40%.  Id. at ¶ 9.  Thus, although the FBI is diligently attempting to reduce its FOIA/PA backlog

and processing time, in the short term, the measures taken have had an impact on available FBI

FOIA processing resources.  As a result, a reduced number of personnel have had to take on a

greater burden, in the face of additional and unexpected court deadlines imposed in other cases.[2]

 Hardy Decl. at ¶¶ 15-20; see also Defendant's Motion at 12-18, 23-25) (fully elaborating the

exceptional circumstances and constraints currently faced by the FBI).  For all of these reasons,

the FBI faces "exceptional circumstances" in reducing its FOIA backlog warranting an Open

America stay until May of 2009.

### III.    Defendant Has Exercised the Necessary Due Diligence

Plaintiff asserts that because defendant has not yet assigned the 20,000 potentially-

responsive documents "to a FOIA/Privacy Act processing analyst for review," defendant has

somehow failed to exercise due diligence.  Pl. Opp. at 12.  Other than simply pointing out that

seven months have elapsed since plaintiff submitted its FOIA request, Pl. Opp. at 12, Plaintiff

provides no basis for its assertion that defendant has somehow taken too long to assign plaintiff's

request to a FOIA/PA processing analyst.  Plaintiff also completely ignores defendant's well-

established FOIA request-processing system, where requests are processed on a first-in/first-out

basis, and assigned to one of three queues, depending upon the size of a request.  Hardy Decl. at

¶ 21(b)(ii).

Pursuant to its FOIA request processing system, the FBI has proceeded in due course

---

[2]  Plaintiff makes the completely unsupported statement that "there is little evidence that the litigation deadlines cited by Defendant will significantly affect the Bureau's ability to process Plaintiff's FOIA request in a timely manner.  Pl. Opp. at 10.  Plaintiff, however, fails to take account of the fact that because defendant has been ordered by other courts to undertake special processing of the FOIA requests in the identified cases, these cases necessarily are being treated differently than they otherwise would (under the FBI's first-in/first-out processing system), and are therefore claiming resources that would otherwise be available for FOIA/PA requests such as plaintiff's.
            .

with respect to plaintiff's request.  The FBI first conducted a search at FBI Headquarters for responsive records, and located only one file.  Id. at ¶ 27.  The FBI then expanded its search to field offices around the country.  Id. at ¶¶ 37-38.  As a result of the expanded, nationwide, search, the FBI identified approximately 20,000 pages of documents potentially responsive to plaintiff's request.  Id. at ¶ 38.  The FBI is in the process of scanning the documents and will place plaintiff's request, pursuant to standard procedures, in the large queue of the perfected-case backlog, where it will be reviewed on a first-in/first-out basis.  Id. at ¶ 39.  Indeed, the FBI estimates that plaintiff's request will reach the top of the large-processing queue in early May of 2007.  Id. at ¶ 39.

In addition, defendant has demonstrated that it has made reasonable progress in reducing its backlog, despite the tremendous burdens on its resources.  Due to a continual influx of FOIA/PA requests, and to the resulting appeals and litigation, the FBI's backlog jumped from its 1981 level of between 4,000-7,000 requests to a high of 16,000 requests in 1996.  Id. at ¶ 5.  In 1996, the median time for a pending request was in excess of three years.  Id.  Nonetheless, because the FBI adopted new technologies and streamlined processes, it was able to reduce its backlog of requests in various stages of processing from 16,244 as of  December 31, 1996, to 1,672 as of December 31, 2006.  Id.  The median processing time for a pending request dropped from 1,160 days on December 31, 1996, to 156 days on December 31, 2006.  Id.  These concrete figures constitute "reasonable progress" for purposes of 5 U.S.C. § 552(a)(6)(C)(ii).  Moreover, and as noted above, the FBI continues to pursue new methods to reduce its backlog and processing time.  Id. at ¶¶ 8-9; see also Def. Mot. at 25-29 (fully discussing the FBI's reduction of FOIA backlog and processing time over the years).  Although the implementation stage of these projects has strained FBI resources, ultimately the FBI expects these initiatives, after they

6

are fully implemented, to reduce current processing times by 40%.  Id. at ¶ 9; see Pray v. FBI,
1995 WL 764149, *1 (S.D.N.Y. 1995) (considering improved technology as a factor in
establishing due diligence).

      These steps demonstrate the necessary due diligence, and the Court should grant the
FBI's request for a stay.  See Kuffel v. BOP, 882 F. Supp. 1116, 1127 (D.D.C. 1995) (agency is
"making a good faith effort and exercising due diligence in processing [plaintiff's] requests on a
first-in first-out basis"); Rabin v. United States Department of State, 980 F. Supp. 116, 122
(E.D.N.Y. 1997) ("[D]efendant State Department has shown the . . . 'due diligence' that courts
have required . . .  [It] appears to be attempting to comply with requests."); Lisee v. CIA, 741 F.
Supp. 988, 989 (D.D.C. 1990) (holding that agencies' processing of FOIA requests on a first-in,
first-out basis satisfied the "exceptional circumstance" and "due diligence" requirements for
stay); Ferguson v. FBI, 722 F. Supp. 1137, 1140 (S.D.N.Y. 1989) (extensions should be given
when the court is "presented with evidence of an overburdened agency following necessary
procedures") (citations omitted); Freeman v. Department of Justice, 822 F. Supp. 1064, 1066
(S.D.N.Y. 1993) (the court is "satisfied that [the FBI] is doing the best it can do within its
physical limitations to process all requests in a timely manner").

      In sum, the FBI has demonstrated both exceptional circumstances and due diligence in
handling plaintiff's request, as well as diligence and reasonable progress in reducing its backlog,
and the Court should stay the proceedings until May of 2009 to allow the FBI time to process
plaintiff's request.

## IV.    Defendant is Prepared to Release Documents on a Rolling Basis

      Plaintiff has indicated a willingness to accept interim releases of responsive material.  Pl.
Opp. at 14 n.5.  As noted in defendant's motion and the accompanying Hardy Declaration,

defendant expects it will be able to review and process approximately 800 pages every four weeks.  Hardy Decl. at ¶ 39.  Defendant also intends to make releases approximately every four weeks until the production is complete, rather than delay the release until the entire production is ready.  Id.

**<u>CONCLUSION</u>**

In view of the foregoing, defendant respectfully requests that an Order be issued staying

the pending proceeding for 27 months, or until May of 2009.  In the alternative, defendant

requests that it be allowed to release documents every four weeks to plaintiff on a rolling basis

until the production is complete.

Respectfully submitted,

JEFFREY TAYLOR
United States Attorney
PETER D. KEISLER
Assistant Attorney General
ELIZABETH J. SHAPIRO
Assistant Director


_____/s/_____
HEATHER PHILLIPS, CA Bar #191620
Trial Attorney
United States Department of Justice
Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20001
(202) 616-0679
Heather.phillips@usdoj.gov

9