## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER
FOUNDATION,

    Plaintiff,

     v.

DEPARTMENT OF JUSTICE,

    Defendant.

Civil No. 06-1708  (CKK)

## MEMORANDUM OPINION
(May 7, 2007)

This case comes before the Court on a motion by Defendant Department of Justice

("DOJ" or "Defendant"), on behalf of the Federal Bureau of Investigation ("FBI"), for a stay

pursuant to *Open America v. Watergate Special Prosecution*, 547 F.2d 605 (D.C. Cir. 1976).

Plaintiff Electronic Frontier Foundation ("EFF"), seeks agency records pursuant to the Freedom

of Information Act ("FOIA"), 5 U.S.C. § 552, and opposes Defendant's request for a stay.  The

requested records pertain to DCS-3000 and Red Hook, two tools that the FBI has developed to

conduct electronic surveillance.  Pursuant to the instant motion, DOJ seeks a stay of 27 months –

through May of 2009 – which DOJ asserts would provide the FBI sufficient time to complete the

necessary review and release of records.  Upon searching consideration of Defendant's Motion,

memoranda, and supporting declaration, Plaintiff's Opposition and supporting declaration,

Defendant's Reply, and the relevant case law, the Court shall grant-in-part Defendant's motion

for an *Open America* stay.  Specifically, the Court shall stay the proceedings in this matter for

one year, until May 9, 2008, with the possibility that the Court may grant an extension of the stay

if DOJ demonstrates that such an extension is warranted.  In addition, during the pendency of the

stay, DOJ shall make interim releases of material responsive EFF's FOIA request every four (4)

weeks, and shall file status reports with the Court every 90 days regarding the overall progress of

its review and release of records.

## I.  BACKGROUND

Plaintiff Electronic Frontier Foundation is a not-for-profit corporation that works to

inform policymakers and the general public about civil liberties issues related to technology.

Compl. ¶ 3.  According to EFF, in July 2000, the Wall Street Journal reported that the FBI had

deployed a surveillance system, known as "Carnivore" and later as DCS-000, which monitored

traffic at Internet service provider facilities to intercept information in the electronic mail of

criminal suspects.  *Id.* ¶ 5.  EFF further asserts that this system  "raised substantial concerns on

the part of Congress and the general public about the potential over-collection of personal

information in the course of FBI surveillance;" however, reports subsequently submitted to

Congress revealed that the FBI did not use DCS-1000 to conduct Internet surveillance in fiscal

years 2002 or 2003.  *Id.* ¶¶ 5-6; Ans ¶ 6.  In March 2006, the DOJ Inspector General issued a

report concerning the implementation of the Communications Assistance for Law Enforcement

Act ("CALEA"), which contained information about two other electronic surveillance systems

developed by the FBI, stating:

> System DCS-3000.  The FBI has spent nearly $10 million on this system.  The
> FBI developed the system as an interim solution to intercept personal
> communications services delivered via emerging digital technologies being used
> by wireless carriers in advance of any CALEA solutions being deployed.  Law
> enforcement continues to utilize this technology as carriers continue to introduce
> new features and services.
>                                    *        *        *

2

Red Hook. The FBI has spent over $1.5 million to develop a system to collect
voice and data calls and then process and display the intercepted information in
the absence of a CALEA solution.

Compl. ¶ 7; Ans. ¶ 7.

By letter dated August 11, 2006, EFF submitted a FOIA request to the FBI, seeking "all

agency records (including, but not limited to, electronic records) concerning electronic

surveillance systems known as DCS-3000 and Red Hook." 2/9/07 Decl. of David M. Hardy

(hereinafter "Hardy Decl."), Ex. A (8/11/06 Letter from M. Hoffman to D. Hardy).[1]  By letters

dated August 22, 2006, the FBI acknowledged receipt of EFF's FOIA request and assigned

separate numbers to EFF's requests for documents regarding DCS-3000 and Red Hook.  Hardy

Decl., Ex. B (8/22/06 Letters from D. Hardy to M. Hoffman).  The FBI searched the main files of

its Central Records System ("CRS") for records responsive to EFF's request at FBI

headquarters,[2] and located no records responsive to EFF's DCS-3000 request and one file

responsive to EFF's Red Hook request.  Hardy Decl. ¶ 36.[3]  In addition, the FBI circulated an

---

[1] Mr. Hardy is the Section Chief of the Record/Information Dissemination Section
("RIDS"), Records Management Division ("RMD"), at FBI headquarters in Washington, D.C.
Hardy Decl. ¶ 1.

[2] Defendant's Motion, and Mr. Hardy's Declaration in support of that Motion each
contain significant detail regarding the FBI's system for maintaining records.  *See* Def.'s Mot. at
8-9; Hardy Decl. ¶¶ 29-34.  As the details of this system are not pertinent to the instant motion
for an *Open America* stay, it suffices to note that the CRS is primarily an investigative tool that is
also searched in response to FOIA requests to the FBI, via the Automated Case Support System
("ACS").  Def.'s Mot. at 8-9; Hardy Decl. ¶¶ 29-30.  Data is retrieved through the ACS using the
General Indices, which are arranged in alphabetical order, and include both "main" entries and
"reference" entries.  Def.'s Mot. at 9; Hardy Decl. ¶¶ 31-34.

[3] By letter dated August 30, 2006, the FBI advised EFF that no main files responsive to
its DCS-3000 request were located at FBI headquarters.  Hardy Decl., Ex. C (8/30/06 Letter from
D. Hardy to M. Hoffman).  In its Opposition, Plaintiff asserts that it did not receive this letter via
mail, but does not dispute that it was sent, and further acknowledges that the adequacy of the

electronic communication to the divisions and offices within FBI headquarters that were deemed most likely to possess potentially responsive records, and individuals within those divisions and offices accordingly searched their files for records responsive to EFF's request. *Id.* ¶ 37.[4] As a result of these search efforts, the FBI has located approximately 20,000 pages of records potentially responsive to EFF's request. *Id.*

On October 3, 2006, having failed to receive any documents responsive to its FOIA request within the 20-working-day time frame mandated by the FOIA, EFF filed its Complaint in this action. Compl. ¶ 11; Pl.'s Opp'n at 5. EFF was subsequently notified of the volume of records potentially responsive to its FOIA request and, on December 16, 2007 and January 9, 2007, counsel for EFF spoke with a RIDS representative about the possibility of EFF's narrowing its FOIA request. Hardy Decl., Ex. D (1/9/07 Letter from D. Hardy to M. Hoffman); 3/14/07 Decl. of Marcia Hoffman (hereinafter "Hoffman Decl.") ¶ 3[5]; Def.'s Mot. at 10. The RIDS representative broadly described the categories of potentially responsive records and asked whether EFF would be willing to narrow its FOIA request by removing any of these categories from the scope of its request. Hoffman Decl. ¶¶ 4-6; Hardy Decl., Ex. D. Counsel for EFF

_____

FBI's search is not at issue because the FBI subsequently located approximately 20,000 pages of potentially responsive materials through further searches. Pl.'s Opp'n at 4 n.1.

[4] These offices included: Critical Incident Response Group, Criminal Justice Information Services, Counterintelligence, Counterterrorism, Criminal Investigative, Cyber, Directorate of Intelligence, Office of the General Counsel, Inspection, Information Technology Program Management, Operational Technology, Law Enforcement Coordination, and Records Management Division. Hardy Decl. ¶ 37.

[5] Ms. Hoffman appears to have erroneously dated her Declaration March 14, 2006; however, the Declaration clearly dates from 2007 because it discusses her conversation with a RIDS representative on January 9, 2007. Hoffman Decl. ¶ 3.

declined to do so "because the number of potentially responsive pages was so indefinite, and because [she] was unwilling to remove broad categories of documents from the scope of the request without a better understanding of their content."  Hoffman Decl. ¶ 8; Hardy Decl., Ex. D.

On February 9, 2006, DOJ moved this court for a stay pursuant to the grounds set forth in *Open America*, 547 F.2d 605.  In support of its motion, DOJ claims that although the FBI is exercising due diligence in responding to EFF's FOIA request, exceptional circumstances prevent it from processing the request within the statutory time limit.  Def.'s Mot. at 1.  DOJ further asserts that the FBI is processing EFF's request in accordance with its established first-in/first-out policies,[6] and that FBI is making substantial efforts to reduce – and has achieved significant reductions in – its backlog and processing time for FOIA requests.  *Id.* at 2, 12-13 (citing Hardy Decl. ¶¶ 5-7).  DOJ specifically claims that it is prevented from processing EFF's request more quickly because the FBI experienced a significant increase in FOIA requests in 2006, *id.* at 12-13 (citing Hardy Decl. ¶ 7), and because RIDS is facing several urgent and competing federal district court litigation deadlines as well as a high volume of administrative appeals, both of which require the diversion of resources from the processing of FOIA requests such as EFF's, *id.* at 16-17 (citing Hardy Decl. ¶¶ 10, 15-20).

---

[6] Defendant's Motion and Mr. Hardy's Declaration both contain considerable descriptions of the FBI's FOIA processing system.  *See* Def.'s Mot. at 2-8; Hardy Decl. ¶¶ 21-24.  In general terms, RIDS, the section at FBI headquarters responsible for responding to FOIA requests, currently employs approximately 203 personnel within 11 units.  Def.'s Mot. at 3; Hardy Decl. ¶ 22.  Two of these units, the Work Process Units, handle the various tasks required to perfect a FOIA request and, once a request is perfected, it is placed in the "perfected backlog" for assignment to a FOIA Disclosure Unit for processing.  Def.'s Mot. at 4-5; Hardy Decl. ¶ 22. Requests are placed in one of three queues, based on the total amount of material responsive to the request, and are assigned to one of the Disclosure Units (which perform the actual processing of records) based on the date of their arrival within the appropriate queue.  Def.'s Mot. at 5-6; Hardy Decl. ¶ 22.

In addition, DOJ asserts that the FBI is facing unprecedented personnel shortages as a result of the physical relocation of a portion of RIDS' operations to Frederick County, Virginia. *Id.* at 14-16 (citing Hardy Decl. ¶¶ 9-14). According to DOJ, the FBI has undertaken two efforts that it expects will eventually reduce its processing times for FOIA/Privacy Act requests by 40%: (a) development of the electronic investigative case file (the "Sentinel Project") and (b) establishment of an FBI Central Records Complex. *Id.* at 14 (citing Hardy Decl. ¶ 9). The FBI has begun designing and building a new Central Records Complex in Frederick County, Virginia, and has begun relocating RMD sections – including those consisting of the most senior and experienced RIDS employees – to interim sites within Frederick County, which is approximately 90 miles outside of Washington, D.C. *Id.* at 14-15 (citing Hardy Decl. ¶¶ 10-13). However, many RIDS employees have decided not to transfer with their unit function to Frederick County, and a total of 58 former RIDS employees have either resigned, retired, or found other jobs in the Washington, D.C. area, rather than relocate. *Id.* at 15 (citing Hardy Decl. ¶ 13). DOJ asserts that the FBI is engaged in aggressive and intensive recruitment efforts in Frederick County, Virginia, but that RIDS remains 115 positions under its funded staffing level, and may not be able to hire any new employees in the immediate future due to a federal government hiring freeze. *Id.* at 15-16 (citing Hardy Decl. ¶ 14). In any event, DOJ notes, new employees take an average of three years to be able to work as efficiently as experienced employees. *Id.* at 16 (citing Hardy Decl. ¶ 14). DOJ additionally argues that EFF's refusal to narrow the scope of its FOIA request weighs in favor of granting a stay. Def.'s Mot. at 22-23.

Plaintiff opposes an *Open America* stay, arguing that DOJ has failed to show exceptional circumstances sufficient to justify a stay, Pl.'s Opp'n at 9-11, and that the FBI  has not exercised

due diligence in processing EFF's request, *id.* at 12-13.  EFF asserts that, rather than being

granted a stay, the FBI should be ordered to complete processing of EFF's FOIA request within

sixty (60) days.  *Id.* at 13-14.  EFF also argues that, if the Court permits DOJ additional time to

process EFF's request, the FBI should be ordered to make interim releases of responsive material

every four (4) weeks and to make periodic reports to the Court on its progress toward completing

its processing of EFF's request.  *Id.* at 14 n.5.

## II.  DISCUSSION

### A.    *Legal Standard*

Under Section 552 (a)(6)(C)(I) of the FOIA, the Government may obtain a stay of

proceedings "[i]f the Government can show exceptional circumstances exist and that the agency

is exercising due diligence in responding to the request."  5 U.S.C. § 552(a)(6)(C)(I).  In *Open*

*America*, the D.C. Circuit addressed Section 552(a)(6)(C)(I) and found that an agency is entitled

to additional time under FOIA's "exceptional circumstances" provision when the agency:

> is deluged with a volume of requests for information vastly in excess of that
> anticipated by Congress, when the existing resources are inadequate to deal with the
> volume of such requests within the time limits of subsection (6)(A), and when the
> agency can show that it "is exercising due diligence" in processing the requests.

547 F.2d at 616 (quoting 5 U.S.C. § 552 (a)(6)(C)).  Effective October 2, 1997, as part of the

Electronic Freedom of Information Amendments of 1996, Congress added the following two

subsections to Section 552(a)(6)(C):

> (ii)     For purposes of this subparagraph, the term "exceptional circumstances" does
> not include a delay that results from a predictable agency workload of
> requests under this section, unless the agency demonstrates reasonable
> progress in reducing its backlog of pending requests.

> (iii)    Refusal by a person to reasonably modify the scope of a request or arrange an

> alternative time frame for processing a request (or a modified request) under
> clause (ii) after being given an opportunity to do so by the agency to whom
> the person made the request shall be considered as a factor in determining
> whether exceptional circumstances exist for purposes of this subparagraph.

5 U.S.C. § 552 (a)(6)(C)(ii), (iii).  The legislative history of the 1996 amendments reveals that

Congress, having considered the decision in *Open America*, intended the amendments to be

"consistent with the holding in *Open America*," and sought only to "clarify that routine,

predictable agency backlogs for FOIA requests do not constitute exceptional circumstances."

H.R. Rep. 104-795 at 24 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3448, 3467.  However, the

amendments clearly contemplate that other circumstances, such as an agency's efforts to reduce

the number of pending requests, the amount of classified material, the size and complexity of

other requests processed by the agency, the resources being devoted to the declassification of

classified material of public interest, and the number of requests for records by courts or

administrative tribunals, are relevant to the courts' determination as to whether exceptional

circumstances exist.  *Id.*

    When considering a request for an *Open America* stay, "[a]gency affidavits are accorded a

presumption of good faith, which cannot be rebutted by purely speculative claims about the

existence and discoverability of other documents." *Safecard Services, Inc. v. Securities and

Exchange Commission*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citations and internal quotation

marks omitted).

    B.    *EFF's Refusal to Narrow its Request*

    In arguing for an *Open America* stay, DOJ initially notes that EFF declined to narrow its

FOIA request, when advised of the number of potentially responsive documents and given the

8

opportunity to do so.  Def.'s Mot. at 22.  Accordingly, DOJ argues that EFF should not be allowed to complain that the FBI requires additional time to process EFF's request.  *Id.* at 2-3. Pursuant to the 1996 Amendments to FOIA, "[r]efusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) . . . after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist . . . ."  5 U.S.C. § 552(a)(6)(C)(iii).  DOJ therefore argues that EFF's unwillingness to modify the scope of its FOIA request during conversations with a RIDS representative should weigh in favor of granting an *Open America* stay.  Def. Mot. at 13-15.

EFF responds by justifying its refusal to narrow the scope of its request – asserting that the FBI did not provide a definite number of potentially responsive pages and only broadly described the categories of potentially responsive documents.  Pl.'s Opp'n at 6-7 (citing Hoffman Decl. ¶¶ 8-9).  In addition, EFF "stresses that it remains open to discussing ways to narrow the scope of its request or prioritize the release of material at issue once the amount and substance of the responsive records are clearly defined."  *Id.* at 7.[7]  The Court understands EFF's response to argue that it did not refuse to "reasonably modify" the scope of its FOIA request, but rather that

---

[7] The heading of EFF's Opposition that discusses its refusal to narrow the scope of its FOIA request states that DOJ has "not carried its burden of showing that it is entitled to an *Open America* stay by offering Plaintiff an opportunity to narrow its request."  Pl.'s Opp'n at 6.  DOJ believes this statement represents a misunderstanding of the FOIA on the part of EFF, correctly noting that the statute does not require that an agency grant a requestor an opportunity to narrow its search.  Def.'s Reply at 2-3; *see also* 5 U.S.C. § 552(a)(6)(C)(iii).  Although the language of EFF's heading may be read to suggest a mistaken belief that DOJ bears a burden of offering a requestor an opportunity to narrow its request, it may also be read as asserting that DOJ cannot show that it is entitled to an *Open America* stay simply by noting that EFF declined to narrow its FOIA request when given an opportunity to do so.  The argument that follows EFF's heading corresponds with the latter interpretation, as it attempts to justify EFF's refusal.

the FBI did not provide EFF with sufficient information to allow an informed decision that modification was appropriate.  It therefore appears that EFF's refusal to narrow the scope of its FOIA request, in and of itself, would not justify the granting of an *Open America* stay. Nevertheless, as discussed below, the Court shall grant an *Open America* stay because DOJ has otherwise demonstrated that it is appropriate to do so.

        C.     *Exceptional Circumstances*

        In seeking a stay of the proceedings in this action, DOJ contends that it is operating under exceptional circumstances.  Def. Mot. at 23-25.  Specifically, DOJ points to the increase in FOIA requests in 2006, from an average of 911 per month in 2005 to an average of 1,277 per month, which DOJ asserts has led to a backlog of requests in RIDS as of December 31, 2006 of approximately 1,672 requests.  *Id.* at 23 (citing Hardy Decl. ¶¶ 6-7).   DOJ further argues that the FBI "has taken all possible steps to aid in the streamlining and reduction of the FOIA/Privacy Act backlog," and that these steps include developing the Sentinel Project and establishing a Central Records Complex.  Unfortunately, however, those initiatives, which are expected to reduce the FBI's FOIA request processing time in the long-run, have led to a short-term deficit in FBI FOIA processing resources – most strikingly in RIDS' staffing level.  *Id.* (citing Hardy Decl. ¶¶ 8-9, 13-14).  In addition, DOJ points to the "urgent and competing federal district court litigation deadlines" faced by RIDS and the "high volume of administrative appeals that require review and response by the RIDS personnel" as further exceptional circumstances.  *Id.* at 24 (citing Hardy Decl. ¶¶ 16-18, 20).

        EFF challenges each of the reasons DOJ proffers in support of its claim that exceptional circumstances exist sufficient to justify a stay, and the Court shall address each in turn.  With

respect to DOJ's claim that it faces urgent federal district court litigation deadlines, EFF argues

that "there is little evidence that the litigation deadlines cited by Defendant will significantly

affect the [FBI's] ability to process Plaintiff's FOIA request in a timely manner."  Pl.'s Opp'n at

10.  DOJ responds to this argument by noting that when the FBI is required to comply with a

court-ordered deadline, it must divert personnel who would otherwise be available for FOIA

requests such as EFF's.  Def.'s Reply at 5 n.2.  DOJ's argument is logical in the abstract,

however, the two specific litigation deadlines to which DOJ points have already passed, DOJ has

not indicated a particular deadline for a third litigation, and DOJ has not indicated the scope of

records requiring processing in a fourth litigation.  *See* Def.'s Mot. at 16; Hardy Decl. ¶¶ 16-19.

As such, the fact that the FBI faces obligations in other litigations is not, in and of itself,

sufficient to establish exceptional circumstances.

Nor does DOJ succeed in demonstrating exceptional circumstances by claiming that the

high volume of administrative appeals faced by RIDS represents "another significant drain on

resources."  Def.'s Mot. at 17-18; Hardy Decl. ¶ 20.  DOJ asserts that during 2006, the FBI

received a total of 1015 administrative appeals and that, as of January 31, 2007, 525

administrative appeals were pending resolution.  *Id.*  DOJ also acknowledges, however, that "this

number does not represent an increase."  *Id.*  DOJ therefore has not shown that the number of

administrative appeals facing the FBI is anything other than a predictable and regular contributor

to its backlog of FOIA requests.

Nevertheless, DOJ has shown that the staffing shortage facing RIDS constitutes

"exceptional circumstances" under *Open America*.  EFF responds to DOJ's claims regarding its

staffing shortage by arguing that "an agency's other processing commitments and personnel

difficulties are insufficient to justify an *Open America* stay." Pl.'s Opp'n at 9-10. In support of

this assertion, EFF cites *Leadership Conference on Civil Rights v. Gonzalez*, 404 F. Supp. 2d 246

(D.D.C. 2005), in which the court declined to "get involved in defendants' personnel and project

management difficulties." *Id.* at 259. In that case, however, it appears that the agency attempted

to demonstrate exceptional circumstances by pointing to a large backlog of FOIA requests, court

orders requiring maximum manpower on an emergency basis, and unspecified "personnel

issues," which the court found represented only "a predictable backlog of FOIA requests." *Id.*

Here, Mr. Hardy's Declaration establishes that during 2006, the FBI received roughly an

additional 1/3 as many requests per month as it received in 2005. Hardy Decl. ¶ 7. Moreover,

Mr. Hardy's Declaration establishes that this increase has been coupled with a significant and

unexpected decrease in the staff available to process those requests, as a result of the relocation

of certain RIDS sections to interim locations in Frederick County, Virginia. *Id.* ¶¶ 9-14. As

such, DOJ has established that the FBI is facing more than just a routine backlog of FOIA

requests or ordinary personnel problems. Mr. Hardy's Declaration constitutes sufficient evidence

for the Court to find that DOJ has been "deluged with a volume of requests for information vastly

in excess of that anticipated by Congress," and that its "existing resources are inadequate to deal

with the volume of such requests within the time limits." *Open America*, 547 F.2d at 616.

      D.    *Due Diligence*

     In support of its motion for an *Open America* stay, DOJ argues that the FBI is exercising

due diligence in processing EFF's request, both at the systemic level and with respect to EFF's

particular FOIA request. Specifically, while the FBI's backlog of FOIA and Privacy Act requests

jumped to a high of over 16,000 requests in 1996, the FBI has devoted significant resources to

reducing that backlog and has succeeded in reducing it to 1,672 requests at the end of 2006.

Def.'s Mot. at 26 (citing Hardy Decl. ¶¶ 5-6).  The FBI has achieved this significant reduction by

seeking additional funding for the creation of new FOIA positions and moving to paperless

processing of FOIA requests.  *Id.*  In addition to reducing the number of pending FOIA requests,

the FBI has reduced its processing times for small and medium FOIA requests by 10% and 16%,

respectively.  *Id.* at 27 (citing Hardy Decl. ¶ 7).   While DOJ acknowledges that the FBI's

processing time for large FOIA requests has increased by 22%, DOJ explains that this increase

was due to an effective effort to reduce the backlog of older, larger cases.  *Id.*  Furthermore, as

discussed above, the FBI continues to make efforts to reduce the backlog and processing time for

FOIA requests, by developing the Sentinel Project and establishing the Central Records

Complex.  *Id.* at 27 (citing Hardy Decl. ¶¶ 8-9).  Finally, DOJ employs a "first-in, first-out"

policy for handling FOIA requests, which has been "adopted by the D.C. Circuit as [a] sufficient

showing of due diligence."  *Edmond v. United States Attorney*, 959 F. Supp 1, 3 (D.D.C. 1997)

(citing *Open America*, 547 F.2d at 614-16).

    With respect to EFF's specific FOIA request, the FBI has identified approximately 20,000

pages of records potentially responsive to EFF's request based on an electronic communication

to the divisions and offices within FBI headquarters deemed most likely to possess potentially

responsive records.  Def.'s Mot. 28 (citing Hardy Decl. ¶ 38).  As of its Reply, the FBI was in the

process of scanning these documents into electronic format for review, and estimated that EFF's

request would reach the top of the large-processing queue for assignment to an analyst in early

May 2007.  Def.'s Reply at 6 (citing Hardy Decl. ¶ 39).

    EFF makes no effort to challenge any of DOJ's assertions regarding the FBI's systemic

due diligence.  Instead, EFF asserts that the FBI has not exercised due diligence from the outset

with respect to EFF's FOIA request because the FBI "has not yet even assigned [the potentially

responsive documents] to a FOIA/Privacy Act processing analyst for review" and because it has

taken the FBI "more than *seven (7) months* to merely collect documents that *may* be responsive

to Plaintiff's request."  Pl.'s Opp'n at 12 (emphasis in original).  However, "agency affidavits are

accorded a presumption of good faith," *Safecard Services, Inc.*, 926 F.2d at 1200, and Mr.

Hardy's Declaration establishes that EFF's FOIA request has been handled pursuant to the FBI's

standard first-in/first-out procedure for assigning requests for review within each size-based

queue, Hardy Decl. ¶ 21(b)(ii).  The Court finds no grounds upon which to reject the factual

assertions set forth in Mr. Hardy's Declaration, which sufficiently establishes that the FBI has

exercised due diligence on both a systemic level and with respect to EFF's FOIA request.

 As EFF notes, under D.C. Circuit law, an *Open America* stay may be granted "(1) when

an agency is burdened with an unanticipated number of FOIA requests; *and* (2) when agency

resources are inadequate to process the requests within the time limits set forth in the statute; *and*

(3) when the agency shows that it is exercising 'due diligence' in processing the requests; *and* (4)

the agency shows 'reasonable progress' in reducing its backlog of requests."  *Wilderness Soc. v.*

*Dep't of the Interior*, Civ. A. No. 04-650 (CKK), 2005 U.S. Dist. LEXIS 20042, at *31-32

(D.D.C. Sept. 12, 2005) (citing *Williams v. Fed. Bureau of Investigation*, Civ. A. No. 99-3378

(AK), 2000 U.S. Dist. LEXIS 17493, at *4 (D.D.C. Nov. 30, 2000) (emphasis in original) and

*Summers v. Dep't of Justice*, 925 F.2d 450, 452 n.2 (D.C. Cir. 1991) (noting first three factors)).

Here, DOJ has successfully demonstrated each of these factors, and thereby established that an

*Open America* stay is warranted.

E.      *The Scope of the Stay*

In its motion, DOJ seeks an *Open America* stay of approximately 27 months: three months for EFF's FOIA request to rise to the top of the FBI's backlog queue for large requests, and 24 months for processing of EFF's request, at a rate of approximately 800 pages every four (4) weeks.  Def.'s Mot. at 1-2 , 11 (citing Hardy Decl. ¶¶ 4, 39).  Roughly three months have passed since DOJ filed its motion for an *Open America* stay, such that EFF's FOIA request should now be at or near the top of the queue for large requests and processing of EFF's request should begin shortly.  As discussed above, DOJ has established that an *Open America* stay is warranted in this matter, and the Court is cognizant of DOJ's estimates as to the time it will take the FBI to process EFF's FOIA request.  However, the Court is also desirous that EFF's FOIA request be processed as expeditiously as possible.  The Court shall therefore grant DOJ a stay of one year – until May 9, 2008 – and shall consider the possibility of extending that stay at the end of the year, if DOJ is able to demonstrate that such extension is warranted.

In the interim, DOJ has indicated that during the pendency of the stay, the FBI will release documents approximately every four (4) weeks on a rolling basis, rather than delay the release until the FBI's entire production is ready.  *Id.* at 11-12 (citing Hardy Decl. ¶ 39); Def.'s Reply at 8.  Although EFF generally opposes the stay, it is amenable to – and in fact seeks – interim releases of responsive material.  Pl.'s Opp'n at 14 n.5.  EFF also requests that the FBI provide periodic status reports to the Court on its progress toward completing the processing of EFF's FOIA request.  *Id.*  The Court shall therefore order the FBI to make interim releases of records responsive to EFF's FOIA request during the pendency of the *Open America* stay.  In addition, the FBI shall file status reports with the Court every ninety (90) days regarding its

15

progress in processing EFF's FOIA request.

### III. CONCLUSION

For the foregoing reasons, the Court shall grant-in-part DOJ's motion for an *Open America* stay, finding that DOJ has demonstrated that the FBI is exercising due diligence in responding to and processing EFF's FOIA request but that exceptional circumstances prevent the FBI from doing so within the time limits set forth in the FOIA.  The instant action shall be stayed for one year – until May 9, 2008, with the possibility of a further extension of the stay.  During the pendency of the stay, DOJ shall make interim releases of material responsive EFF's FOIA request every four (4) weeks, and shall file status reports with the Court every 90 days regarding the overall progress of its review and release of records, as set forth in the accompanying Order.

Date:   May 7, 2007

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge