IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, )<br>  )<br>Plaintiff, )<br>  )<br>v. )<br>  )   No. 06cv1708 (CKK)<br>DEPARTMENT OF JUSTICE, )<br>  )<br>Defendant. )<br>  ) | |

### DEFENDANT'S MEMORANDUM ADDRESSING
### THE PROPRIETY OF SAMPLING IN THIS FOIA MATTER

Pursuant to the Court's Minute Order of July 11, 2008, Defendant submits the following memorandum in support of its position that sampling is warranted in this Freedom of Information Act ("FOIA") lawsuit, and that the Court may order the parties to proceed by preparing a Vaughn index[1] of a representative sample of responsive documents, notwithstanding Plaintiff's objection.

### BACKGROUND

In August 2006, Plaintiff submitted a FOIA request to the FBI seeking "disclosure of records concerning DCS-3000 and Red Hook, which are tools the Bureau has developed to conduct electronic surveillance." Plaintiff's Complaint ("Pl. Compl.") at ¶ 1. On May 7, 2007, the Court granted Defendant's motion for a stay pursuant to Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976). During the pendency of the stay, Defendant

---

[1] See Vaughn v. Rosen, 484 F. 2d 820, 827-28 (D.C. Cir. 1973).

was ordered to make interim releases of documents to Plaintiff, and to provide the Court with a status report every 90 days. On May 1, 2008, Defendant informed the Court that it had completed its review and processing of all pages responsive to Plaintiff's FOIA request. In all, 7935 responsive pages were reviewed, and 5240 pages were released in full or in part.

The parties have been unable to reach agreement on the scope of a Vaughn index. Plaintiff demands that Defendant prepare a comprehensive Vaughn index describing the entirety of the withheld material and the basis for the withholdings. Given the volume of responsive documents, however, as well as competing demands on the FBI's FOIA unit, Plaintiff's request is untenable, and would impose an unnecessary burden on the parties and the Court. Instead, a representative Vaughn index would provide Plaintiff with ample opportunity to contest the bases for the exemptions asserted by Defendant. Such a sample, based on 5% of the documents, would expedite these proceedings and promote judicial efficiency and economy by reducing the exemption issues to a manageable size, thereby permitting the Court to extrapolate its conclusions from the representative sample to the larger group of withheld materials. This Vaughn index could be provided within 90 days of the selection of documents to be sampled.

## ARGUMENT

### A.   Legal Standard Governing the Preparation of a Sample Vaughn Index

Courts have routinely held that it is unnecessary for agencies to produce comprehensive Vaughn indices in cases involving voluminous records.[2] For example, in Dowd v. Calabrese,

---

[2] Indeed, Vaughn v. Rosen, 484 F.2d 820 (1973), where this Circuit articulated the standards of specificity governing a FOIA defendant's claims of exemption, was applied by the District Court on remand to require an index describing only nine "representative reports" out of 2448 reports requested by plaintiff. See Vaughn v. Rosen (II), 523 F.2d 1136, 1139-40 (D.C. Cir. 1975). The Court of Appeals affirmed the District Court's disposition on the basis of that

101 F.R.D. 427, 437 (D.D.C. 1984), this court held that the production of a Vaughn index for 15,000 pages of documents was unduly burdensome.  Likewise, the court in Bonner v. United States Dep't of State, 928 F.2d 1148 (D.C. Cir. 1991), approved a sample Vaughn index of 63 out of 1776 disputed documents, and noted that representative sampling is "an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved."  Id. at 1149-51.  See also Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1489-90 (D.C. Cir. 1984) (holding that a comprehensive Vaughn index of 60,000 documents would have been inappropriate because "the District Court clearly could not have undertaken a review of each of the documents"); Canning v. United States Dep't of Justice, 2008 WL 2791856, ___ F. Supp. 2d ___ (D.D.C. 2008) (ordering plaintiff to select a sample of 5% of 5253 documents); Summers v. United States Dep't of Justice, 517 F. Supp. 2d 231, 236 (D.D.C. 2007) (authorization by the Court for a plaintiff-selected sample of 50 pages (out of 1100 pages produced) "to be the subject of defendants' Vaughn Index in order for the Court to evaluate the use of the FOIA exemptions"); Blanton v. United States Dep't of Justice, 63 F. Supp. 2d 35, 43 (D.D.C. 1999) (filing, pursuant to court order, of a Vaughn index providing a representative sample of approximately 200 documents selected by plaintiff out of approximately 2500 responsive documents); Washington Post v. Dep't of Defense, 766 F. Supp. 1 (D.D.C. 1991) (sampling ordered for 14,000 documents); Allen v. Dep't of Defense, 658 F. Supp. 15 (D.D.C. 1986) (plaintiff ordered to designate sample of 350 documents from among the 5000 produced by the CIA).

---

nine-sample index alone.  Id. at 1140.

**B.    Current Constraints on FBI Resources in Preparation of a <u>Vaughn</u> Index in this Matter**

Requiring the FBI to prepare a <u>Vaughn</u> index for the 7935 pages at issue would significantly and unnecessarily delay the resolution of Plaintiff's claims. The FBI's Records Management Division ("RMD") has been undergoing a gradual relocation to an off-site location in Frederick County, Virginia, some 90 miles outside of Washington, D.C. <u>See</u> Sixth Declaration of David M. Hardy ("Hardy Decl.") ¶¶ 8-10, attached hereto as Exhibit 1. The FBI has begun the temporary relocation of RMD sections to interim sites in Frederick County, Virginia, and will continue with a full relocation of its workforce once the permanent Central Records Complex is built and ready for occupancy, sometime around the year 2010. <u>Id.</u> ¶ 8. The Record/Information Dissemination Section ("RIDS"), which is the RMD section responsible for processing FOIA requests, began relocation of its operations in February of 2006 by establishing an advance team to prepare for relocation. <u>Id.</u> The RIDS relocation will be complete on or about September 8, 2008. <u>Id.</u> Although RIDS made every effort to minimize disruption to operations during this transition period, many employees have opted not to transfer with their unit to Frederick County, Virginia, choosing instead either to retire or find other jobs. <u>Id.</u> ¶ 9. Many of these employees were among the most senior and experienced in their area of expertise. <u>Id.</u>

Since RMD announced its off-site relocation plans, a total of 140 former RIDS employees have either resigned, retired, or found other jobs in the Washington, D.C.-area, rather than relocate with their unit. <u>Id.</u> Given this loss of personnel, the FBI has engaged in aggressive and intense recruitment and hiring efforts in the Frederick County, Virginia area. <u>Id.</u> ¶ 10. Over 500 potential candidates have been interviewed, with 82 new employees now on board. <u>Id.</u> The

new RIDS employees – who have less than one year of experience – are in various stages of professional development, but none are yet operating as experienced employees. Id. It takes an average of three years to adequately train a new employee in the FOIA/Privacy Act process to be able to work independently in a productive, efficient, and effective manner. Id. Accordingly, RIDS has only a limited number of experienced employees processing FOIA/Privacy Act requests at this time. Id. Even more importantly, there are currently very few Legal Administrative Specialists ("LAS") who would be able to effectively complete a Vaughn index addressing the entire 7935 pages at issue in this matter. Id. As of September 8, 2008, the RIDS Unit responsible for preparing the Vaughn declaration in this case – the Litigation Support Unit – will be comprised of one supervisor, two senior LASs, one experienced LAS, and seven LASs who will have been with the FBI and RIDS for two years or less, and who will have just begun their litigation training. Id. Moreover, the FBI is actively defending 100 other FOIA/Privacy Act lawsuits nationwide, each of these with its own set of deadlines. Id. ¶ 11.

     As the responsive material in this case is complicated scientific information, preparation of the Vaughn index will need to be assigned to a senior LAS. Id. ¶ 12. This senior LAS will be required to engage in numerous consultations with the operations divisions and/or units with substantive knowledge regarding the documents. Id. This LAS's caseload consists of eleven other complex cases currently in litigation. Id. In addition, this senior LAS will have the responsibilities of mentoring the new LASs and, when necessary, serving as the acting supervisor. Id.

     Given these circumstances, it will take this senior LAS approximately eighteen months of full-time work to prepare a Vaughn declaration for the 7935 responsive pages at issue in this

matter. Id.. Alternatively, it will take three months from the time a sample is selected for the senior LAS to prepare a Vaughn declaration for a 5% sample of the documents in this case. Id. ¶ 13. As noted, the voluminous documents at issue in this matter are complex and technical, and require extra time to properly index. Hardy Decl.¶¶ 12-13. In addition, and as fully described above, the FBI is facing constraints that severely limit its ability to produce a comprehensive Vaughn index of this volume. Id. ¶¶ 8-10. As Plaintiff's request places an undue burden on Defendant, Defendant should not be required to respond with a comprehensive Vaughn index. See, e.g., Dowd, 101 F.R.D. at 437; Weisberg, 745 F.2d at 1489-90.

### C. Notwithstanding Plaintiff's Objection, Representative Sampling is Warranted in this Matter

Here, as in Dowd, the comprehensive Vaughn index that Plaintiff requests is unduly burdensome. 101 F.R.D. at 427. Nor is a comprehensive Vaughn index necessary to the resolution of this litigation, as Defendant has offered to produce a sample Vaughn index that is representative of all FOIA exemptions claimed by the FBI. In Bonner, the U.S. Court of Appeals for the District of Columbia expressly approved of the approach to Vaughn indexing that Defendant requests here. Specifically, the Court, in approving a representative index of 63 out of 1776 documents, reasoned as follows:

> Representative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved . . . . Representative sampling allows the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a Vaughn index or an in camera inspection. If the sample is well-chosen, a court can, with some confidence, "extrapolate its conclusions from the representative sample to the larger group of withheld materials."
>
> Representative sampling thus involves a trade-off between the high

> degree of confidence that comes from examining every item for which exemption is claimed, and the limitations of time and resources that constrain agencies, court, and FOIA requesters alike.

Bonner, 928 F.2d at 1151 (quoting Fensterwald v. United States Central Intelligence Agency, 443 F. Supp. 667, 669 (D.D.C. 1977)) (citations omitted).

A sample Vaughn index is therefore appropriate, as here, where there is a large number of documents that need to be indexed and where the Court can extrapolate from the representative sample to the larger group of withheld materials. Bonner, 928 F.2d at 1151; see also In re United States Dep't of Defense, 848 F.2d 232, 237 (D.C. Cir. 1988) (noting that it is within the trial judge's discretion to choose random or representative sampling, as appropriate, and approving district court's use of representative sampling for a total of 2000 documents); Jones v. Federal Bureau of Invest., 41 F.3d 238, 242-44 (6th Cir. 1994) (finding that a random sample of 533 pages of documents was sufficient to review the propriety of the agency's withholding of documents and agreeing with the lower court that "where, as here, a large number of documents have been withheld from disclosure by the government, it would not be realistically possible for the Court to review all of the documents at issue"); Meeropol v. Meese, 790 F.2d 942, 959 (D.C. Cir. 1986) (approving random sampling of 1% of responsive documents); Weisberg, 745 F.2d at 1490 (affirming district court's decision to require a Vaughn index of a sampling of documents "rather than examining each and every document on which challenged exemptions were claimed"); Ash Grove Cement Co. v. Federal Trade Commission, 511 F.2d 815, 817 (D.C. Cir. 1975) (approving sampling of documents for in camera inspection); Campaign for Responsible Transplantation v. FDA, 180 F. Supp. 2d 29, 33-34 (D.D.C. 2001) ("Representative sampling can be used to include items that are typical of broader classes of

documents within the pool") (quotation omitted); Blanton, 63 F. Supp. 2d at 43 (approving use of representative Vaughn index comprised of approximately 200 documents).

Furthermore, there is ample support for the use of sampling in voluminous FOIA cases, even where a plaintiff objects. Meeropol, 790 F.2d 942, 958 (D.C. Cir. 1986) (upholding sample size of 1% over Plaintiffs' objections); Jones, 41 F.3d at 241-42 (noting that district court had approved sampling of 10,485 responsive pages over plaintiff's request for a complete Vaughn index and agreeing that "where, as here, a large number of documents have been withheld from disclosure by the government, it would not be realistically possible for the Court to review all of the documents at issue"); Campaign for Responsible Transplantation, 180 F. Supp. 2d at 29 (denying Plaintiff's motion for a comprehensive Vaughn index, and granting Defendant's motion to allow sampling); cf Nishnic v. United States Dep't of Justice, 671 F. Supp. 776, 785 (D.D.C. 1987) (rejecting plaintiff's argument "that defendant cannot unilaterally adopt a sampling procedure absent an agreement with plaintiffs"). See also Campaign for Responsible Transplantation v. FDA, 511 F.3d 187, 191 (D.C. Cir. 2007) (recognizing that district court had approved use of sampling over plaintiff's objection). Thus, notwithstanding Plaintiff's objection, this Court may allow Defendant to produce a sample Vaughn index.

Defendant estimates that a representative sample index could be completed in ninety days from the date the sample is selected, instead of the eighteen months necessary to complete the comprehensive Vaughn index sought by Plaintiff. Hardy Decl. ¶¶ 12-13. Producing a sample Vaughn index would also impose less of a burden on the Court, which could extrapolate the propriety of the FBI's claimed exemptions from the representative sample, rather than review the entirety of the FBI's production. In addition, the type of information contained in the documents

at issue in this matter is repetitive in nature, so that a Vaughn declaration on the larger set of documents will provide no greater insight for Plaintiff and the Court than the proposed sample. Hardy Decl. ¶ 7. Ideally, Plaintiff and Defendant could agree upon the documents to be sampled. Plaintiff could then rely on the sample Vaughn index with a high degree of confidence that it would be representative of the greater universe of FBI-generated documents responsive to its request. Thus, a representative sample would allow the Court to adequately address the basis for Defendant's claimed exemptions, and preserve the resources of the parties while promoting judicial economy. See Bonner, 928 F.2d at 1151.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's request for a comprehensive <u>Vaughn</u> index, and instead allow Defendant to prepare a <u>Vaughn</u> index of a representative sample of responsive documents.

Dated: August 1, 2008                Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

JOHN R. TYLER
Senior Litigation Counsel, Federal Programs Branch


/s/ Heather R. Phillips
HEATHER R. PHILLIPS, CA Bar #191620
Trial Attorney, Federal Programs Branch
Civil Division
20 Massachusetts Ave NW, 7222
PO Box 883 (US Mail)
Washington, DC 20044
Tel: 202-616-0679
Fax: 202-616-8470
email: heather.phillips@usdoj.gov
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> U. S. DEPARTMENT OF JUSTICE, ) <br> ) <br> Defendant. ) | Civ. A. No. 1:6-CV-01708 -CKK |

### SIXTH DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1) I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney, and have been licensed to practice law in the State of Texas since 1980.

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 194 employees who staff a total of ten (10) units and a field operational service center unit whose collective mission is to effectively plan, develop, direct and manage responses to requests for

access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3) Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded the FOIA request of plaintiff, the Electronic Frontier Foundation, for documents related to two electronic surveillance systems. More specifically, plaintiff's August 11, 2006 FOIA request seeks access to records pertaining to System DCS-3000 and Red Hook, and any reports made by the FBI to Congress on the FBI's use of these technologies.

(4) This declaration is submitted in support of defendant's position to proceed with a <u>Vaughn</u> declaration based on a sample of documents.

(5) In response to plaintiff's August 11, 2006 FOIA request, the FBI made ten interim releases to plaintiff, consisting of 5,240 pages released out of a total 7,935 pages reviewed. In so doing, the FBI has reviewed and processed all pages responsive to plaintiff's request.

(6) I have been advised that counsel for defendant proposed that in order to resolve the case based on dispositive motions in a manner which would expedite resolution and achieve judicial economy, defendant would submit a <u>Vaughn</u> declaration based on a representative

sample of the documents produced. Defendant has done this in a number of litigations which involve several thousands of pages of documents, such as this one. I am advised that following additional dialogue between counsel for the parties, plaintiff's counsel refused to consent to proceeding based on a <u>Vaughn</u> of a representative sample. Despite plaintiff's lack of consent, the FBI believes that the selection of a representative sample for which the FBI will prepare a <u>Vaughn</u> declaration is the most efficient manner in which to proceed to summary judgment. If defendant had to prepare a <u>Vaughn</u> declaration for all 7,935 pages at issue in this case, we would require 18 months. This is in part due to the complex, technical nature of the documents at issue, as well as several resource constraints, discussed below, which the FBI is presently facing. By contrast, a <u>Vaughn</u> declaration based on a representative sample of documents consisting of approximately 400 pages (5% of the total number of pages) would require three months after the representative sample has been selected.

(7)     In addition, the type of information contained in the documents is repetitive in nature so that a <u>Vaughn</u> declaration on the larger set of documents will provide no greater insight for plaintiff and the Court than the proposed sample. In view of the administrative burden for the FBI to prepare and the Court to review a declaration addressing close to 8000 pages, with the declaration itself estimated to be easily over one hundred and fifty pages long, sampling is the most judicially efficient manner in which to resolve this case.

### RMD Relocation to Frederick County, Virginia

(8)     First, defendant's Records Management Division has been undergoing a gradual relocation to an off-site location some 90 miles outside of Washington, D.C., about 1 ½ hours drive from FBIHQ. RIDS began relocation of its operations in February 2006 by establishing an

advance team to prepare for the eventual relocation of RIDS in incremental stages. The RIDS relocation will be complete effective September 2008, with the final set of personnel scheduled to move on or about September 8, 2008. The decision to locate the permanent FBI Central Records Complex ("CRC") site to Frederick County, Virginia, was recently finalized by the U.S. General Services Administration. The FBI has begun the temporary relocation of RMD sections to interim sites in Frederick County, Virginia, and will continue with a full relocation of its workforce once the permanent CRC is built and ready for occupancy, sometime around the year 2010.

(9)   RIDS has made every effort to minimize disruption to operations during this transition period. This has been made all the more challenging as many employees have chosen not to transfer with their unit function, opting to either retire or find other jobs rather than relocate to Frederick County, Virginia. Unfortunately, many of these employees have been among the most senior and experienced in their areas of expertise. Since RMD announced its off-site relocation plans, 140 former RIDS employees have either resigned, retired, or found other jobs in the Washington, D. C. Metropolitan area, rather than relocate with their unit.

(10)   In light of this loss of personnel, the FBI is engaged in aggressive and intense recruitment and hiring efforts in the Frederick County, Virginia area. Over 500 potential candidates have been interviewed, with 82 new employees now on board. The new RIDS employees who have less than one year of experience are in various stages of professional development, but none are yet operating as experienced employees. It takes an average of three years to adequately train a new employee in the FOIA/Privacy Act process to be able to work independently in a productive, efficient, and effective manner. Accordingly, RIDS has only a limited number of experienced employees processing FOIA/Privacy Act requests at this time. Even more importantly, the primary Legal Administrative Specialists ("LASs") who are able to

4

effectively complete a Vaughn declaration addressing the entire 7,935-page collection of documents will have dwindled significantly by September 8, 2008. For example, it is anticipated that after September 8, 2008, the RIDS Unit responsible for preparing the Vaughn declaration in this case, the Litigation Support Unit "LSU," will be comprised of one supervisor, two senior LASs, one experienced LAS, and seven LASs who have been with the FBI and RIDS for two years or less and have just started their litigation training.

### LSU's Preparation of the Vaughn Declaration in this Case

(11) Plaintiff is not alone in suing the FBI. The FBI is actively defending numerous other lawsuit in district courts and appellate courts across the country, each with its own set of deadlines. At this time, the FBI is defending 100 FOIA/Privacy Act lawsuits nationwide.

(12) The responsive material in this case consists of complex, scientific information. Accordingly, this litigation, along with the preparation of the Vaughn declaration, has been assigned to a senior LAS, who will be required to engage in numerous consultations with the operational divisions and/or units with substantive knowledge regarding the documents. This LAS's caseload consists of 11 other complex cases currently in litigation. In addition, this senior LAS will have the responsibilities of mentoring the new LASs and, when necessary, serving as the acting supervisor. Under these circumstances, it will take the senior LAS approximately 18 months of full-time work to prepare a Vaughn declaration for the 7,935 pages in this case.

(13) Alternatively, the FBI anticipates that it will require approximately three months after the representative sample has been selected for the senior LAS assigned to this case, who will be required to set aside her other supervisory responsibilities, to prepare a Vaughn declaration for a representative sample of documents consisting of approximately 400 pages (5% of the total number of pages). In light of the technical nature of the documents at issue, as well as the significant resource constraints the FBI's FOIA staff is experiencing at the present time,

5

sampling is not only more beneficial to the FBI, but also judicially the most efficient manner in which to resolve this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of August, 2008.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.